**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 1999-KA-00537-SCT**

*FRANK C. CHATMAN, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/1998 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONNA SUE SMITH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/1/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/22/2000 |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Here, we are presented with two questions: (1) whether a defendant is entitled to a more specifically worded instruction when the law of the more specific instruction is given in another instruction; and (2) whether a photograph of a bloody crime scene is admissible. Although under certain circumstances the defendant may be entitled to a more specific instruction, and under certain circumstances such photographs are not admissible, we hold such circumstances do not exist here.

**I.**

¶2. Frank C. Chatman, Jr., was indicted on or about August 11, 1998, on a two-count indictment alleging armed robbery and aggravated assault. Chatman was tried on the indictment on November 23, 1998. The testimony, which was largely uncontradicted, reflected the facts as set forth below.

¶3. On December 8, 1997, Donald Temple ("Temple") and Lavina Sherrod ("Sherrod") were working at Popeyes Fried Chicken in Columbus, Lowndes County, Mississippi. About 11:00 p.m., closing time, Sherrod asked Temple to warm up their cars. Temple went outside, while Sherrod set the burglar alarm. Temple saw a person wearing a ski mask and dressed in all black with a handgun approaching Popeyes. Temple ran back inside. The gunman followed Temple into Popeyes, where he told Temple he was going to die. The gunman fired his gun, but missed Temple. Temple charged the gunman, and a struggle for the gun ensued. Several more shots were fired during the struggle. Temple was shot in the leg and hand.

¶4. A second assailant, totally dressed in black and wearing a mask, entered the premises. The second assailant began to hit Temple in the head with a hard object, which Temple believed to be a gun. This assailant also told Temple he was going to die. Temple was told to get down on the floor. After he did so, he heard a third voice saying to the first two assailants "You shot him!" Temple saw a mask hit the floor, and the assailants left.

¶5. Temple called 911, and law enforcement responded. An investigation commenced which led to the arrest of Frank C. Chatman, Jr. ("Chatman"), on or about April 24, 1998. Chatman initially refused to talk with the investigators regarding his involvement in these crimes. However, the next day, April 25, 1998, Chatman had the jailors contact Sergeant Billy Turner ("Turner"), an investigator for the Columbus Police Department, to tell Turner he wished to speak with him. Turner had Chatman transported from the Lowndes County Adult Detention Facility to the Police Departments Criminal Investigation Division interrogation room.

¶6. Officer James Grant ("Grant"), Turner and Chatman were present in the interrogation room on April 25, 1998. Turner asked Chatman if he wanted to talk to them, and Chatman responded affirmatively. Turner read an Advice of Rights Form, and Chatman executed the same, acknowledging that he understood his rights as explained to him by that form and Turner. Chatman told Turner and Grant that he and two of his cousins on the night of December 8, 1997, went to the Popeyes Fried Chicken in Columbus. One of his cousins entered Popeyes with a gun and chased an employee to the back of the premises. Then Chatman entered Popeyes and heard gun shots. Chatman went to the back of the store and hit the employee until he dropped to the floor. They ran to Chatmans truck and left.

¶7. Chatman then told Turner and Grant that he and his cousins had planned the armed robbery of Popeyes the day or night before the crime was committed. Chatman acknowledged again that he had requested to speak to Turner and that he gave this statement of his own free will and accord. There was no motion to suppress the statement on any grounds. This statement was admitted at trial. During trial Chatman did not testify and did not call forth any witnesses. The defense theory on cross-examination seemed to be mistaken identity.

¶8. The jury convicted Chatman on both counts of the indictment, and the trial court then moved to the sentencing phase of the trial. The jury recommended life in prison on the armed robbery conviction. Subsequently, the trial court imposed a life sentence for armed robbery and a fifteen-year sentence on the aggravated assault conviction. The sentences are to run consecutively. From that judgment, Chatman perfected this appeal.

## II.

¶9. The State failed to file a timely brief in this appeal. An appellee's failure to file a brief on appeal "is tantamount to confession" of the errors alleged by the appellant. ***Muhammad v. Muhammad***, 622 So.2d 1239, 1242 (Miss. 1993). However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed. ***Id.***

## III.

¶10. Chatman argues that the trial court abused its discretion in allowing pictures of the bloody crime scene into evidence over a timely objection. We disagree.

¶11. The admissibility of pictures of gruesome crime scenes is within the sound discretion of the trial court. *Walters v. State*, 720 So.2d 856, 861 (Miss. 1998); *Underwood v. State*, 708 So. 2d 18, 33-34 (Miss.1998). We will reverse only where it is clear that discretion was abused. *Cohen v. State*, 732 So.2d 867, 872 (Miss. 1998); *See also* **Wilson v. State**, 390 So.2d 575, 580 (Miss. 1980); *Knight v. State*, 751 So.2d 1144, 1150 (Miss. Ct. App. 1999).

¶12. In our view, the photos are hardly gruesome. They show only blood spatters at various places in the store. They were admitted during the testimony of Officer Rick Jones to illustrate the crime scene. Further, the photos support Temple's testimony that he was shot. We find no abuse of discretion in admitting these photos.

## IV.

¶13. Chatman contends that the circuit court abused its discretion by refusing to give his requested jury instruction D-1. Jury Instruction D-l, as proposed by Chatman, reads as follows:

> Each person testifying in this case is a witness. The jury must determine the believability of the witnesses. You may consider the following factors in weighing the testimony of a witness:
>
> 1. the intelligence of the witness;
>
> 2. the ability of the witness to observe and accurately remember;
>
> 3. the sincerity, or lack of sincerity, of a witness;
>
> 4. the demeanor of the witness;
>
> 5. the extent to which the testimony of the witness is supported or contradicted by other evidence;
>
> 6. whether discrepancies in testimony are the result of innocent mistake or deliberate falsehood; and
>
> 7. any other characteristics noted by the Jury.
>
> You may reject or accept all or any part of the testimony of a witness; or you may reject parts, but accept other parts of the testimony of a witness,
>
> After making your own judgment, give the testimony of each witness the credibility, if any, as you think it deserves.

¶14. The trial court refused to give this instruction, stating that there was no law to support it. We disagree. There is law to support such an instruction. The appellate courts of Mississippi, which the lower court must follow, have upheld similar instructions. *See* **Tri-State Transit Co. v. Moore**, 188 Miss. 722, 196 So. 231 (1940) (citing **W. T. Farley, Inc. v. Smith**, 158 Miss. 404, 130 So. 478 (1930)); *McRoy v. State*, No. 98-KA-00215-COA, 1999 WL 87609 (Miss. Ct. App.1999).

¶15. However, "[t]he trial court enjoys considerable discretion regarding the form and substance of jury instructions."*Higgins v. State*, 725 So.2d 220, 223 (Miss. 1998) (citations omitted). In order to prevail on a claim that the trial courts refusal to give a requested instruction was an abuse of discretion, a defendant must show that his requested instruction was (1) a correct statement of the law, (2) not substantially

covered in the jury charges as a whole, and (3) of such importance that the courts failure to instruct the jury on that issue seriously impaired the defendants ability to present his given defense. *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998). In our view, here, that cannot be done.

¶16. Our law is clear. A court must view jury instructions as a whole, and not individually, in order to decide whether the jury was adequately instructed. *Morgan v. State*, 741 So.2d 246, 253 (Miss. 1999). Further, "an instructional error will not warrant reversal if the jury was fully and fairly instructed by other instructions."*Collins v. State*, 594 So.2d 29, 35 (Miss. 1992). Here, the jury was adequately instructed by the trial court. Instruction C-1 properly informs the jury of the things it should consider when weighing witness testimony. The pertinent part of C-1 provided:

> It is your duty to determine the facts and to determine them from the evidence produced in open court. You are to apply the law to the facts and in this way decide the case. You should not be influenced by bias, sympathy and prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork, or conjecture.

> You are the sole judges of the facts in this case. Your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.

Thus, Chatman fails the second prong of *Davis* test, which he put forth. Further, if a defendant fails the second prong of *Davis* the third prong is also failed.

¶17. Although it is clear that D-1 goes into greater detail than C-1, credibility was not a critical issue to Chatman's defense. No witness identified Chatman, and there was no dispute as to whether a robbery and assault occurred. It is clear that Chatman's statement, which he admitted to giving, was the cause of his conviction. No witness could give first hand knowledge of his involvement. It follows that for this reason as well Chatman fails the third prong of *Davis*. Therefore, the circuit court did not abuse its discretion in refusing Chatman's requested Jury Instruction D-1.

## V.

¶18. For these foregoing reasons, the judgment of the circuit court is affirmed.

¶19. **COUNT I: CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AT HARD LABOR AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I.**

> **PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**