IRVING, P.J.,
for the Court:
¶ 1. In July 2009, in Ridgeland Municipal Court, Raymond Drabicki entered a plea of no contest to driving under the influence pursuant to Mississippi Code Annotated section 63-ll-30(1)(c) (Rev.2004) and reckless driving pursuant to Mississippi Code Annotated section 63-3-1201 (Rev.2004). The municipal court found Drabicki guilty of both offenses, and he appealed his conviction to the County Court of Madison County, which, after a trial de novo, also found him guilty of both offenses. Dra-bicki filed a motion for a judgment notwithstanding the verdict, or, in the alternative, a new trial, which the county court denied. He appealed to the Madison County Circuit Court, which affirmed his conviction. Feeling aggrieved, Drabicki now appeals and argues that the Intoxilyzer results should not have been admitted into evidence, that the circuit court erred in considering untruthful testimony from the arresting officer, and that the circuit court erroneously denied his motion to strike the appellee’s brief.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On March 28, 2009, Officer Daniel Soto, with the Ridgeland Police Department, observed Drabicki traveling at a high rate of speed on Lake Harbor Drive in Ridgeland, Mississippi. Officer Soto was stationary in the parking lot of the Shell gas station at the corner of Lake Harbor and Old Canton Road. Officer Soto indicated that he noticed that Drabicki’s front tires were spinning as Drabicki’s ve- *115 hide came through the Lake Harbor and Old Canton intersection heading west. He immediately began- to pursue Drabicki and reached a speed of eighty-seven miles per hour in an effort to stop him. Officer Soto also noted that during the pursuit, Dra-bicki hit a puddle of water, lost control of the vehicle, and nearly hit another vehicle.
¶ 4. Once Officer Soto stopped Drabicki, he opened Drabicki’s car door and ordered him to exit the vehicle. Officer Soto testified that as soon as he opened the car door, he smelled alcohol. He asked Dra-bicki how much he had to drink, and Dra-bicki responded by stating that he had two drinks at Buffalo Wild Wings. Officer Soto asked Drabicki to submit to a portable breath test, to which Drabicki complied. The results registered positive for alcohol.
¶ 5. Officer Soto asked Drabicki to perform several field sobriety tests. Drabicki complied, and Officer Soto first administered the horizontal-gaze-nystagmus test, where he observed all six of the recognized clues indicating intoxication. Next, Officer Soto administered the walk-and-turn test and noted that four out of eight clues indicated intoxication. Officer Soto stated that Drabicki could not maintain his balance during the instructions, that Dra-bick started the test before instructions were completed, that he missed the heel-to-toe movement on his steps, and that he also made improper turns. On the one-leg-stand test, Officer Soto noted that Drabicki swayed and used his arms for balance, two out of four possible clues indicating intoxication. Officer Soto placed Drabicki under arrest and transported him to the Ridgeland Police Department. Because the Intoxilyzer machine there was not working, he took Drabicki to the Madison Police Department to administer the test. Drabicki consented, and the results of the Intoxilyzer registered a .16 blood-alcohol content.
¶ 6. Additional facts, as necessary, will be related in our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Admission of the Intoxilyzer Results

¶ 7. Decisions regarding the admissibility of evidence will be reversed only if the trial court has abused its discretion. Palmer v. City of Oxford, 860 So.2d 1203, 1207 (¶ 10) (Miss.2008). “The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence.” Id. at 1207-08 (¶ 10). Drabicki argues that the county court erred in admitting the Intoxilyzer results because doing so violated his right to confrontation under the Sixth Amendment.
¶ 8. The Mississippi Supreme Court has specifically stated that the admission of the certificates indicating the results of the Intoxilyzer is not a violation of the right to confrontation in the absence of the calibrating officer’s testimony. See Harkins v. State, 735 So.2d 317, 319 (¶ 5) (Miss.1999). In fact, one of the only times that the State must “present testimony and allow cross-examination of the calibrating officer” is when “there is a genuine issue as to the authenticity of the certification[.]” McIlwain v. State, 700 So.2d 586, 591 (¶ 22) (Miss.1997).
¶ 9. Drabicki cites Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), for the proposition that the Confrontation Clause requires the in-person testimony of the calibrating officer. We disagree. While Melendez-Diaz does hold that the Sixth Amendment guarantees to a defendant the right to confront at trial the analyst *116 who has done the drug analysis of any contraband alleged to have been sold by the defendant, id. at 311, 129 S.Ct. 2527, our supreme court in Matthies v. State, 85 So.3d 838, 843-44 (¶ 19) (Miss.2012), stated that even in the wake of Melendez-Diaz, “records pertaining to [I]ntoxilyzer inspection, maintenance, or calibration are indeed nontestimonial in nature, and thus, their admission into evidence is not viola-tive of the Confrontation Clause of the Sixth Amendment.” The analysts in Melendez-Diaz would have testified to the actual chemical content of the substance, making the certificates of such analysis testimonial. Id. at 842 (¶ 16). However, in Matthies, the calibration officer would have only testified to the accuracy of the testing device, and as a result, did not have to appear in court, as in the present case. See id. at 844 (¶¶ 19-20).
¶ 10. Next, Drabicki argues that the court erred in finding that the calibration certificate was genuine and authentic as required under Rule 902 of the Mississippi Rules of Evidence because the signature of the calibrating officer was stamped and not literally signed. Drabicki’s assertion is incorrect. A calibration certificate bearing the seal of the Mississippi Crime Laboratory is and the signature of the calibrating officer attesting to the truth of the certificate’s contents is self-authenticating. Pulliam v. State, 856 So.2d 461, 464-65 (¶ 13) (Miss.Ct.App.2003). The operator of the Intoxilizer, Robert Bickley, signed the certificate in accordance with Rule 902. Immediately preceding Bick-ley’s signature is a statement reading, in pertinent part, that “[t]he above instrument, used for breath analysis to determine alcohol content, was tested on below date and found to be in working condition. Calibration of the instrument certified to meet acceptable standards of accuracy.”
¶ 11. The stamped signature that Dra-bicki is referring to is that of Maury Phillips, the section chief of the Implied Consent Section of the Mississippi Crime Lab. Phillips’s stamped signature includes a statement that only attests that the document is a true and correct copy of the original document that is on file in his office. Phillips’s signature does not attest to the accuracy of the instrument or truthfulness of the contents of the certificate. Accordingly, this issue is without merit.
¶ 12. The dissent insists that because the document was actually á copy of the original certificate, it should have been offered under Mississippi Rule of Evidence 902(4) and not Mississippi Rule of Evidence 902(1). The dissent further argues that because there is no evidence that Wendy Hathcock — who affixed Phillips’s stamped signature — was authorized to make a Rule 902(4) certification, then the certificate is inadmissible under Rule 902(4). Rule 902(1) reads as follows:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: ... A document bearing a seal purporting to be that of the United States, or of any State ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
The certificate at issue here meets the requirements of Rule 902(1) because it contains both the Mississippi state seal and Bickley’s attesting signature. It is true, as the dissent points out, that Dra-bicki objected at trial to the admissibility of the certificate. However, he did not object on the basis that the copy of the certificate was not the best evidence under Mississippi Rule of Evidence 1002 and that admitting, the certificate under 902(1) was improper. Drabicki’s only objection was that Phillips’s stamped signature did not *117 properly attest to the document because it was not an actual signature. Therefore, Drabicki is procedurally barred from arguing on appeal that Rule 902(4) was the proper rule for admission of the certificate, and this Court cannot now raise the issue for him.
¶ 13. Procedural bar notwithstanding, the argument that the copy of the certificate was inadmissible under Rule 902(4) is without merit. Under Rule 902(4), extrinsic evidence proving authenticity is not required when the document in issue is
[a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.
Phillips’s signature certified that the certificate was a correct copy, as required by the rule. There is no prohibition under this rule against the custodian’s signature being stamped on the certified document. There was also no argument in the court below raising and preserving the issue of whether Hathcock was authorized to affix the stamped signature on the certificate. Therefore, this issue is also procedurally barred, and this Court cannot raise the issue for Drabicki.

II. Officer Soto’s Testimony

¶ 14. Drabicki contends that his conviction should be overturned because Officer Soto gave false testimony at trial. More specifically, Drabicki contends that Officer Soto lied about the weather conditions on the night of Drabicki’s arrest, Drabicki’s near collision with another vehicle during the pursuit, and the identity of the officer who asked Drabicki whether he had had anything to drink. We have perused the record, including the videotape of the traffic stop, and we disagree with Drabicki’s characterization of Officer Soto’s testimony. There is nothing to suggest that he gave false testimony with respect to any of these matters. Accordingly, this issue is without merit.

III. Motion to Strike Appellee’s Brief

¶ 15. Drabicki argues that because the appellee’s brief was filed well outside of the time limit of Rule 31(b) of the Mississippi Rules of Appellate Procedure, the brief should have been stricken from the record at the circuit court level, and his conviction should have been reversed. Rule 31(d) of the Mississippi Rules of Appellate Procedure states that “[i]f an ap-pellee fails to file the appellee’s brief as required, such brief, if later filed, may be stricken from the record on motion of the appellant or on the motion of the appropriate appellate court.” The rule places the decision to strike the appellee’s brief within the court’s discretion. The rule does not provide that the conviction of the appellant should be reversed.
¶ 16. Our supreme court has held that an appellate court has two options when the appellee has not filed a brief. The failure can either be held as a confession of error and the conviction can be reversed when the record is complicated or large in volume, or the court may disregard the appellee’s failure to file a brief and affirm the conviction when there is a “sound and unmistakable basis ... upon which the judgment may be safely affirmed.” Miller v. Pannell, 815 So.2d 1117, 1119 (¶7) (Miss.2002). Here, the record is not complicated or large in volume, and the basis of the conviction is unmistakable.
*118 ¶ 17. The dissent takes issue with our citation to a civil case, Parnell, for guidance as to what an appellate court should do when the appellee has not filed a brief and suggests that the better standard is that contained in Chatman v. State, 761 So.2d 851, 854 (¶ 9) (Miss.2000). Suffice it to say that Chatman cites to and quotes from Muhammad v. Muhammad, 622 So.2d 1239, 1242 (Miss.1993), a civil case, for the standard it enunciates. Id. at 1242. In our view, the standards are essentially the same, for if there is no sound and unmistakable basis upon which the judgment may be safely affirmed, the court cannot say with confidence that the case should be affirmed.
¶ 18. The dissent also insists that a November 10, 2011 order effectively reversed Drabicki’s convictions and that a judgment should have been rendered in his favor. Respectfully, we disagree. The order reads, in part, “if appellee fails to file a brief within fourteen (14) days after notification of such deficieney[,] this cause shall be dismissed and any conviction of appellant that is the subject of the appeal shall be reversed.” The dissent’s specific argument is that since the City of Ridge-land failed to file a brief within fourteen days after the November 10 order, Dra-bicki’s conviction stood reversed because the circuit court failed to suspend the requirements of Rule 2(a)(2) of the Mississippi Rules of Appellate Procedure, as it could have done pursuant to the provisions of Rule 2(c). First, it should be noted that Rule 2 addresses the dismissal of an appeal and is aimed at the appellant’s dereliction in prosecuting his appeal. The City of Ridgeland did not initiate the appeal. Drabicki did. While we admit that Rule 2(a)(2) permits an appeal to be dismissed “when a party fails to comply substantially with [the] rules,” it is obvious that the rule is aimed at punishing the appellant, not the appellee. Otherwise, there would be no need for our jurisprudence delineating the process to be followed when an appel-lee fails to comply with the requirement to file a brief. Additionally, applying Rule 2(a)(2) as the dissent does would have unjust consequences. For example, an ap-pellee could defeat the right of an appellant to appellate review by simply not complying with the rules. Clearly, that is not the intent of the rule even though that would be the required result, since an ap-pellee is considered a party under Rule 2(a)(2).
¶ 19. We also point out that there is another, and more fundamental, problem with reaching the result that the dissent would have us reach. To reverse and render Drabicki’s conviction because the City failed to file a brief would require this Court to overlook clear precedent by our supreme court. The circuit court sat as an appellate court in the consideration of Dra-bicki’s appeal. Therefore, it was bound by supreme court precedent, as are we, regarding the proper procedure for resolving the issues raised by an appellant when the appellee has not filed a brief. As stated, our supreme court, as well as this Court, has expressly provided what actions an appellate court should take when an appel-lee fails to submit a brief. Dismissal of the appeal is not one of them, nor is reversal of the conviction. See Pannell, 815 So.2d at 1119 (¶ 7); Archie v. City of Canton, 92 So.3d 1279, 1282 (¶10) (Miss.Ct.App.2012). The dissent offers no authority in support of its position that we are required to reverse and render Drabicki’s conviction because the City of Ridgeland failed to file a brief. Nor has the dissent offered any authority for its position that we are bound by an erroneous order entered by the circuit court, allegedly reversing and rendering Drabicki’s DUI convic *119 tion for a reason not sanctioned in our jurisprudence.
¶ 20. Finding no merit to any of the issues raised, we affirm Drabicki’s conviction and sentence.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF FIRST-OFFENSE DRIVING UNDER THE INFLUENCE AND SENTENCE OF FORTY-EIGHT HOURS IN THE CUSTODY OF THE SHERIFF OF MADISON COUNTY, AND FINE OF $750, WITH THE SENTENCE SUSPENDED FOR TWO YEARS UNLESS SOONER INVOKED; AND CONVICTION OF RECKLESS DRIVING, AND FINE OF $100 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., ISHEE, MAXWELL AND JAMES, JJ., CONCUR. BARNES AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY LEE, C.J., AND FAIR, J. CARLTON, J., NOT PARTICIPATING.