ROBERTS, J.,
dissenting:
¶ 22. I must respectfully dissent from the majority’s conclusion that the case before us is error free and can be safely affirmed with confidence. The majority finds that the Circuit Court of Madison County did not err when it affirmed Dra-bicki’s convictions after it allowed the City of Ridgeland to file an untimely appellee’s brief, and after it had already effectively reversed Drabicki’s convictions. Furthermore, the majority finds the County Court of Madison County did not err when it admitted, as self-authenticating, two calibration certificates of the Intoxilyzer 8000 used to test Drabicki. However, I conclude that the circuit court failed to follow the Mississippi Rules of Appellate Procedure when it allowed the City to file its brief well after the circuit court had effectively reversed Drabicki’s convictions in a sua sponte order. In addition, I have grave doubts about the admissibility of the Intoxilyzer 8000 calibration certificates under Rule 902 of the Mississippi Rules of Evidence. Given these issues, I cannot say with confidence that we can safely affirm. Consequently, I would reverse and render Drabicki’s convictions for DUI first offense and reckless driving.
¶ 28. After a non-jury bench trial at the county court level, Drabicki appealed both his convictions to the circuit court on February 8, 2010. On May 18, 2010, the circuit court entered an agreed-upon order extending the time in which Drabicki had to file a brief. On July 19, 2010, Drabicki filed his brief with the circuit court. The circuit court entered four separate agreed orders extending the time in which the City had to file an appellee’s brief, the final deadline for submission being April 21, 2011. The record is then silent for six months until October 6, 2011, when the circuit court sua sponte entered an order requiring the City to file an appellate brief by November 8, 2011.[1] No brief was filed by the City. On November 10, 2011, the circuit court again sua sponte entered an order regarding notice of the City’s deficiency in failing to file a brief. The circuit court ordered the City to correct its deficiency within fourteen days. If the deficiency was not corrected within that time period, the circuit judge ordered that “this came shall be dismissed and any conviction shall be reversed.” (Emphasis add *120 ed). In addition, the November 10, 2011 order stated that the circuit court would not consider further extensions of time to file a brief. The City filed no brief within this fourteen-day period. ■
¶ 24. The circuit court entered yet another sua sponte order on December 29, 2011, finding the City had failed to file its brief after receipt of the fourteen-day notice. Instead of reversing Drabicki’s convictions as required by its prior order, the circuit court ordered the City to show cause for its failure to comply with the circuit court’s November 10, 2011 order or face potential sanctions. Once again the record is silent until January 31, 2012, when the City finally filed its brief with the circuit court. Drabicki filed a motion on February 10, 2012, to strike the City’s brief as untimely filed, but the record gives no indication that the circuit court ever ruled on Drabicki’s motion. The circuit court entered a judgment on February 24, 2012, affirming the convictions and remanding the case back to the county court for execution of the judgment of that court.
¶ 25. Drabicki appealed to the Mississippi Supreme Court on March 29, 2012. Boty McDonald filed his entry of appearance as counsel for the City on May 23, 2012. Drabicki filed his brief on August 9, 2012. The City’s brief was due thirty days later. The City failed to file a brief. This Court’s clerk notified McDonald of the deficiency and gave him fourteen days’ notice to correct it. McDonald ignored the clerk’s warning. To this date, McDonald has once again failed to file a brief on behalf of the City. Consequently, it is necessary to discuss the standard of review where no appellee’s brief exists.
¶ 26. The majority cites Miller v. Pannell, 815 So.2d 1117 (Miss.2002), as the standard on how this Court should review the City’s failure to file an appellate brief. However, Miller is a civil chancery court matter. Miller states:
[The][a]ppellees ... did not file a brief. We have two options in this situation. The first alternative is to take the appel-lees’ failure to file a brief as confession of error and reverse. This should be done when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. The second alternative is to disregard the appellees’ error and affirm. This alternative should be used when the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed.
Miller, 815 So.2d at 1119 (¶ 7) (citations omitted). I believe the more analogous and appropriate standard comes from Chatman v. State, 761 So.2d 851 (Miss.2000). In Chatman, the supreme court addressed circumstances in which the government failed to file a brief incident to a criminal appeal. According to the supreme court:
The State failed to file a timely brief in this appeal. An appellee’s failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed.
Chatman, 761 So.2d at 854 (¶9). While the standards appear similar, I believe that this standard of review is the more appropriate and applicable one to the case before us, as it addresses the rare and peculiar instance where the government fails to file an appellate brief in a criminal matter.
*121 ¶ 27. Upon applying the Chatman standard to the case before us, I conclude that this case merits reversal as a confession of error due to the numerous issues presented to which the City failed to respond, and the fact that I cannot say with confidence that the matter can be safely affirmed.
¶ 28. The first issue is the circuit court’s failure to reverse and render Dra-bicki’s convictions, pursuant to the circuit court’s own order, when the City failed to comply with the Mississippi Rules of Appellate Procedure. Under Rule 12.08(D) of the Uniform Rules of Circuit and County Court Practice, the time in which to file an appellate brief in an appeal from county court to circuit court is governed by Rule 31 of the Mississippi Rules of Appellate Procedure. Since the City failed to comply with the circuit court’s orders regarding the submission of a responsive brief under Rule 31, the circuit court issued the November 10, 2011 sua sponte order invoking Rules 2 and 31 of the Mississippi Rules of Appellate Procedure.
¶29. The November 10, 2011 order states, in part:
[T]here has been an obvious failure to defend against the appeal and a failure to comply substantially with the Mississippi Rules of Appellate Procedure, either of which warrants] this cause being dismissed and any conviction of the appellant that is the subject of this appeal being reversed.... [I]f [the City] fails to file a brief within fourteen (14) days after notification of such deficiency[,] this cause shall be dismissed and any conviction of the appellant that is the subject of the appeal shall be reversed.
(Emphasis added). The record shows the City’s counsel timely received the circuit court’s fourteen-day deficiency notice, and the City did nothing. It was only after the circuit court’s threat of sanctions from another sua sponte order that the City filed its brief on January 31, 2012. That clearly fell outside the fourteen-day deadline required to correct a deficiency under Rule 2(a)(2), which the circuit court had issued to the City.
¶ 30. On November 24, 2011, fourteen days after the circuit court’s November 10, 2011 order, Drabicki’s convictions effectively stood reversed, and a judgment should have been rendered in his favor. It was not. After issuance of the notice of deficiency to the City and its receipt of the notice, the circuit court allowed the City to submit a brief without stating whether the circuit court intended to suspend the requirements of Rule 2(a)(2) under Rule 2(c). The circuit court never indicated that it intended to suspend Rule 2(a)(2). Rule 2(a)(2) states: “The attorney for the party in default has the burden to correct promptly any deficiency or see that the default is corrected by the appropriate official. Motions for additional time in which to file briefs will not be entertained after the notice of the deficiency has issued.” For reasons unknown, the circuit court merely appears to have changed its mind without finding any “interest of expediting decision[ ] or ... other good cause” required by Rule 2(c) to suspend the rules.
¶ 31. Given the absence of any justification for these two errors, I believe Dra-bicki’s convictions were reversed on November 24, 2011, by the circuit court’s own order. Reinstating Drabicki’s convictions after they were effectively reversed raises serious constitutional double-jeopardy concerns.
¶ 32. In addition to the circuit court’s failure to reverse and render this matter, I have other concerns with respect to the admissibility of the two Intoxilyzer 8000 calibration certificates. Since Drabicki was charged under Mississippi Code Annotated section 63-11-30(c) (Rev.2004) for driving under the influence, the accuracy *122 of the Intoxilyzer’s results is crucial to the prosecution’s case. Without proper predicate evidence of the Intoxilyzer’s accuracy, the blood-chemistry basis for Drabicki’s DUI conviction evaporates. While not deciding the admissibility of the certificates, I nevertheless feel a discussion of the relevant rules of evidence and their application in this case is necessary in determining if Drabicki’s convictions can “safely” be affirmed.
¶ 33. During the county court non-jury trial, the following exchange occurred while the City was attempting to introduce the calibration certificates for the Intoxi-lyzer 8000:
The Court: The question then becomes, can this document come in under any of the exceptions to the hearsay rule of 803, and if it can, does it have to be authenticated by an independent witness under, what 901; or may it come in — if there [is] some basis for self-authentication under 902, seems to me.
[[Image here]]
Mr. McDonald: Well, Your Honor, under the shotgun approach, I would offer both paragraph 1, a domestic document under seal, and paragraph 11, certified records of regularly conducted activities; and, Judge, I would also argue ... not only hearsay Rule 803, paragraph 6, records of regularly conducted activity, but also paragraph 8, public records and reports.
(Emphasis added). It is clear from this exchange that the City did not have in mind any singular basis for the admissibility of the calibration certificates. In fact, the record demonstrates the City offered paragraphs one, two, four, and eleven under Rule 902 of the Mississippi Rules of Evidence as a basis for admissibility. Eventually, the following exchange occurred:
The Court: ... So we’re probably back to 902(1) as a basis for self-authentication, would we not be?
Mr. McDonald: Yes, sir.
This discussion continues on, and it appears from the record that Rule 902(1) is the eventual basis under which the calibration certificates are admitted into evidence. The City had no sponsoring witness to identify or authenticate the certificates. They were admitted as general exhibits, as self-authenticating documents.[2] The exhibits purported to demonstrate that the Intoxilyzer 8000 machine at the Madison Police Department had been tested and calibrated both before and after Drabicki was tested and that the machine was within acceptable standards of accuracy.[3]
¶ 34. Rule 902(1) permits self-authentication of domestic public documents under seal when there is:
A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or of the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
This rule would allow the original Intoxi-lyzer 8000 calibration certificates to be admitted as self-authenticating, as they are prepared under seal by the Mississippi Crime Laboratory, and the calibration *123 technician personally signed the certificates attesting to the truth of the certificates’ contents.[4] However, this case does not involve the original calibration certificates. Rather, the City provides certified copies of the calibration certificates, which, it appears, should have been offered under Rule 902(4). In fact, the record demonstrates the City offered what it knew were copies of the original calibration certificates:
The Court: All right. Under what basis, then, is this — are these documents being offered?
Mr. McDonald: Well, Your Honor, I’m offering it as a certified copy of a court record.
The Court: Well, a certified copy of a court record — are you talking about from the lower court?
Mr. McDonald: No, sir — well, from a — a certified copy of the records maintained by the Madison Police Department.
Where certified copies of public records are being offered as evidence, Rule 902(4) provides that:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
[[Image here]]
A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.
(Emphasis added). Applying this rule to the case before us, I detect several eviden-tiary nuances with respect to the copies of the calibration certificates that place their admissibility as self-authenticating public documents in doubt. The original calibration certificates are, according to Rule 902(1), self-authenticating documents, which are prepared under seal by the Mississippi Crime Laboratory and signed by the calibration technician attesting to the truth of the certificates’ contents. Therefore, if the City presented the originals to the county court, there would be no issue here. However, at some point the Mississippi Crime Laboratory copied these original calibration certificates, affixed a stamped certification that appears to comply with Rule 902(4), and eventually these copies, or what appear to me to be copies of copies, were offered into evidence by the City.[5] Drabicki timely and appropriately objected to their admissibility and preserved his issue for appeal. My concern does not focus on the number of times the original documents were copied or whether Rule 902(4) allows copies to be made ad infinitum. Such a discussion is not war *124 ranted here. Rather, my concern centers on whether, under Rule 902(4), Wendy Hathcock was authorized to issue a certification on behalf of Maury Phillips.
¶ 35. Phillips, the section chief of the Implied Consent Section of the Mississippi Crime Laboratory, is the official custodian of the original Intoxilyzer 8000 calibration certificates, presumably for every machine in Mississippi. When the Implied Consent Section issues a certified copy of a calibration certificate, a large certification stamp is affixed to the copy that attests to the truth and correctness of the copy and contains a stamped replication of Phillips’s signature. The stamp also contains a blank “by” line, where Wendy Hathcock has her hand-written signature that appears to be on behalf of, or as an agent for, Phillips. There is no indication on the attestation of Hathcock’s representative capacity. She could be the deputy section chief or a janitor. We simply cannot tell from the face of the document. Rule 902(4) requires that the certification indicate “the other person is authorized to make the certification.” However, there is no indication that Hathcock is authorized to make a Rule 902(4) certification for a certified copy of an original. It appears to me that Rule 902(4) requires some indication of a person’s official capacity or authorization to issue a certification, and since no such indication is apparent on the face of the document, I have serious concerns regarding the admissibility of these exhibits. In addition, Drabicki raises numerous questions as to whether the signature is authentic or genuine such that the copies of the calibration certificates can be self-authenticating. Since the City failed to file an a brief with this Court, Drabicki’s assertions are unanswered. Drabicki’s brief states an apparent case of error in that regard.
¶ 36. The majority cites Pulliam v. State, 856 So.2d 461, 464-65 (¶ 13) (Miss.Ct.App.2003), which found that calibration certificates were self-authenticating where they bore the seal of the Mississippi Crime Laboratory and had a signature attesting to the truth of the documents’ contents. In the current case, the majority’s conclusion that Intoxilyzer calibration certificates are self-authenticating solely based on the signature of the calibration technician does not, I believe, adequately address the specifics of the rules of evidence or the arguments raised in Drabicki’s brief. As I interpret Rule 902(1) and Pulliam, an original calibration certificate would be self-authenticating solely based on the calibration technician’s signature. However, we do not have an original document in the case before us.
¶ 37. The majority may point to the fact that in Pulliam, “[u]pon reopening its case, the State offered duplicates of the certificates of calibration immediately before and after Pulliam’s test. Both were admitted into evidence.” Pulliam, 856 So.2d at 464 (¶ 10). But the Pulliam Court did not mention whether those “duplicates” were multiples of original documents or if they were copies of a single original. In fact, Pulliam has no detailed analysis of the documents the State entered into evidence. If the calibration certificates in Pulliam were multiples of original documents, then they clearly satisfy Rule 902(1). If, however, the calibration certificates were copies of a single original, then the Pulliam Court, in my considered opinion, incorrectly applied Rule 902(1). As I read and interpret the Mississippi Rules of Evidence, Rule 902(1) provides self-authentication to original documents or to the certifications of original documents.
¶ 38. The commentary to Rule 902(1) states, in part: “A wide range of Mississippi public records fall into this category, *125 including acknowledgments and certificates authenticating copies of public records.” (Emphasis added). Therefore, as I understand Rules 902(1) and 902(4) as applied to this case, the certification of a copy, by use of the Implied Consent Section stamp, could provide the self-authenticating basis for the copied calibration certificates, provided that the signatory, Hathcock, was authorized to sign and certify the copy. Once again, since there is no indication of Hathcock’s capacity or her authorization to sign and certify the copies of the Intoxilyzer calibration certificates, the requirements under 902(4) do not appear to be satisfied.
¶ 39. Another matter of concern warrants discussion. Once again, the present procedural posture of this case places this Court in a delicate position relative to the proper role of the judiciary. By affirming Drabicki’s convictions as valid when the City voluntarily chose not to defend their validity, we come perilously close to becoming an advocate for the prosecution. Drabicki’s two-day suspended jail sentence and two-year probationary period have now expired, and it appears that the only remaining issue is his payment of the $2,000 fine, court costs, and assessments. By failing to file a brief, the City may well have deliberately decided to abandon the prosecution of Drabicki.[6] Other states, when confronted with such a conundrum, have determined that the government has abandoned its prosecution of the defendant or treated the government’s actions as grounds for a pro forma reversal. See 5 Am.Jur.2d Appellate Review § 538 (1995); see also State v. Files, 183 Conn. 586, 441 A.2d 27, 29-30 (1981) (motion to remand for new trial granted based on state’s lack of due diligence .in defending a criminal appeal); People v. Keeney, 96 Ill.App.2d 323, 238 N.E.2d 614, 615 (1968) (state’s failure to file an appellee’s brief places the court in an abhorrent role of both advocate and judge such that reversal may be warranted); People v. Spinelli, 83 Ill.App.2d 391, 227 N.E.2d 779, 779 (1967) (prosecuting government’s failure to file an appel-lee’s brief resulted in pro forma reversal); Com. v. Paasche, 391 Mass. 18, 459 N.E.2d 1223, 1224-25 (1984) (state’s failure to file an appellee’s brief in a criminal case could indicate a failure to prosecute). The City’s continual defaults in handling this appeal beg the question as to whether it desires to prosecute this case or has abandoned its prosecution. Such actions place this Court in an untenable judicial dilemma, where we may be affirming convictions that the City has abandoned or no longer desires to prosecute.
¶ 40. Due to the procedural and substantive issues within this case, I cannot say that Drabicki’s convictions can safely be affirmed with confidence under the Chatman standard. Furthermore, I believe this case was effectively reversed and rendered by the circuit court on November 24, 2011. As such, I would reverse and render all of Drabicki’s convictions. Because the majority affirms, I must respectfully dissent.
LEE, C.J., AND FAIR, J., JOIN THIS OPINION IN PART.

. Boty McDonald is counsel for the City.

. These copies of the Intoxilyzer 8000 calibration certificates are prosecution exhibits 2 and 3.

. The Intoxilyzer 8000 machine at the Ridge-land Police Department was not functioning the night of March 28, so Ridgeland Police Officer Soto took Drabicki to the Madison Police Department to use its Intoxilyzer 8000.

. Mississippi Code Annotated section 45-1-17 (Rev.2011) authorizes the creation and existence of the Mississippi Crime Laboratory by providing: “The commissioner shall have the authority to establish, staff, equip[,] and operate a crime detection and medical examiner laboratory, and to cooperate with the University Medical Center and other hospitals and laboratories in its operation.

. The certification stamp itself, which certifies the copies of the calibration certificates in the record before us, appears to meet the Rule 902(4) requirement that it comply with paragraphs (1), (2), or (3) of Rule 902. In this instance, the certification is made under seal and would likely meet the paragraph (I) criteria. However, Rule 902(4) still requires, it appears to me, that the custodian or an authorized person issue the paragraph (1), (2), or (3) certification.

. I take judicial notice of this Court’s own docket. It reflects there are three similar cases presently pending in this Court. In each one, the City of Ridgeland's attorney, McDonald, failed to timely file an appellee’s brief with the circuit court. In addition, in each of these appeals, McDonald again failed to file an appellee's brief with this Court. Those cases are Lobo v. City of Ridgeland, 2012-KM-00525-COA; Drabicki v. City of Ridgeland, 2012-KM-00528-COA; and Carlson v. City of Ridgeland, 2012-KM-01091-COA.