WILSON, J.,
dissenting:
¶ 16. When, as in this case, the appellee fails to file a brief,
this Court has two options. First,.-we may take the appellee’s failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and' the ease has been thoroughly briefed by the appellant with apt and applicable citation of authority so’that ' the brief makes out an apparent case of ..error. However, if the record can be conveniently examined and such exami- • nation reveals a sound and unmistakable basis or ground'upon which .the judgment may be safely affirmed, we may *930 disregard the appellee’s error and- affirm.[1]
In this case, “the record can be conveniently examined,” as it consists primarily of about forty pages of testimony, a video of Webber’s arrest, and a few pictures. The record also “reveals a sound and unmistakable basis” for affirming, namely, that there is sufficient evidence to support the conviction, Therefore, I would affirm.
¶ 17. Webber testified that he woke up “right around 5 a.m.” and decided to drive to the store for cigarettes. While driving through his neighborhood, only a block- and-a-half from his house, Webber drove well off the street into a neighbor’s front yard, where his SUV collided with a sizable Bradford pear tree with enough force, to knock down the tree and do significant damage to the front of the SUV. Webber testified that his SUV “apparently” then “bounced back” approximately seventy feet before coming to rest atop the mailbox of the house next door. According to Web-ber, he crashed as he was trying to put a Stevie Ray Vaughan CD into his CD player.
¶ 18. Webber’s neighbor, Chris Berry-man, came upon the scene on his way home from work and gave Webber a ride back to his house. At first, Berryman thought that Webber was intoxicated, but later he decided that Webber was only “disoriented” from the crash.[2] Webber testified that he “was pretty shaken up,” so after he returned to his house, he “poured [him]self a glass of wine .. -. with ice in it,” called a tow truck, and “then gave [him]self about ten minutes or so before walking [back] up the street.” Webber stated that he had- only “a few sips” of his wine as he walked up the street, and Officer Webb was already on the scene of the crash when he returned. Webber claimed that he did not drink any alcohol prior to the crash.
¶ 19. Officer Webb arrived on the scene at 6:02 a.m. Officer Webb testified that soon after he arrived, he noticed Webber walking away from him about fifty to one hundred feet down the street. Webber appeared intoxicated — he was unsteady on his feet, his speech was slurred, and he smelled strongly of alcohol. Webber told Officer Webb that he had “f — ed up.” Officer Webb arrested Webber for driving under the influence and transported him to the police station. Officer Webb testified that field sobriety tests were not necessary given Webber’s impaired condition, and “it wouldn’t have been safe for [Webber] to do any walk-and-turn or one-leg stand the way he was walking out there.”
¶ 20. Video of Webber en route to the station was admitted into evidence. In the video, Webber makes a number of comments such as that he had “screwed up” and was a “bad-ass criminal.” At no point did Webber attempt to tell Officer Webb that he began drinking only after the *931 crash. The trial judge found that the video was “very compelling as to [Webber’s] impairment.” The judge found that Web-ber was “very impaired” and that “what is seen in the video is not consistent” with Webber’s testimony that he consumed only a small amount of wine after the crash. At 7 a.m., -Webber submitted to an intoxi-lyzer test, which showed a blood-alcohol concentration of .24%, i.e., three times the legal limit.
¶21. On appeal, Webber argues that the evidence was insufficient to sustain his conviction because, in his view, “it was uncontroverted that [he] did not consume any alcohol prior to operating his- vehicle and was not intoxicated.” While that is Webber’s story, it is not consistent with other evidence presented. The trial judge found that the small amount of wine that Webber claimed that he consumed in the few minutes prior to his encounter with Officer Webb did not explain Webber’s obviously impaired state in the video of-his arrest or the results of his intoxilyzer test, which showed a blood-alcohol concentration three times the legal limit at 7 a.m. At best, Webber’s and Berryman’s testimony created an issue of fact for the trial judge to decide. But “viewing the evidence in the light most favorable to the prosecution,” a “rational trier of fact” certainly could have found Webber guilty “beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Web-ber’s evidence was hardly of such “force that reasonable men could not have found beyond a reasonable doubt that [Webber] was guilty.” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). Accordingly, his conviction should be affirmed. Id.
¶ 22. Webber primarily contends that Hedrick v. State, 637 So.2d 834 (Miss. 1994), requires reversal, but the facts of Hedrick are readily distinguishable. Hed-rick was arrested two and a half hours after his car struck and killed a pedestrian. He testified that although he did -not drink any alcohol prior to the fatal accident, he downed a half pint of gin between the accident and his arrest. The statements of another witness also tended to corroborate that Hedrick drank the gin after the accident. After Hedrick was arrested, his in-toxilyzer test showed a blood-alcohol concentration of .13%. See id. at 835-36. The State- presented no evidence at trial that Hedrick consumed alcohol prior to or was intoxicated at the time of the fatal accident. See id. at 838. The Supreme Court concluded that
[t]he lack of testimony or 'other evidence contradicting [Hedrick’s] assertion that he wasp not intoxicated at the time of the accident, as well as the statements made by [another witness] which tended to corroborate [Hedrick’s]' testimony, lead to the conclusion that insufficient evidence was presented at trial upon which the jury could have found the existence of the threshold element of intoxication at the time of the accident.
Id. at 839.
¶ 23. Thus, the evidence was insufficient to convict Hedrick because his post-accident consumption of half a pint of gin fully explained his .13% blood-alcohol concentration, and there was no other evidence to contradict his version of events or to show that he was intoxicated at the time of the accident. The same cannot be said in this case. Webber's testimony that he consumed a small amount of wine in the few minutes before his encounter with Officer Webb did not explain his evident impairment in his arrest video or his .24% blood-alcohol concentration at 7 a.m. At the very least, the video and test results permit an inference that Webber was *932 drinking before the crash, was intoxicated at the time of the accident, and had a blood-alcohol concentration in excess of the legal limit. 'A “rational trier of fact” certainly could have -found, as the1 trial judge did, that Webber must have been intoxicated and over the legal limit before he consumed a small amount of -wine post-crash. Bush, 895 So.2d at 843 (¶ 16).[3] Stated differently, the trial judge was not compelled, as a matter of law, to acquit Web-ber simply because Webber sipped some wine after the fact.
. ¶ 24. For essentially the same reasons, Webber’s claim that his intoxilyzer test results were inadmissible is without merit. The intoxilyzer test in Hedrick had limited probative value, if any, because the defendant consumed a half pint of gin in the three hours between the accident and the test. Here, in contrast, Webber himself testified that he drank, only a- small amount of wine after the crash, which did not explain his blood-alcohol concentration of three times the -legal limit. Evidence of post-accidept alcohol consumption may be admissible, see, e.g., State v. Bashaw, 531 N.W.2d 203, 207 (Minn.Ct.App.1995), as it was in this ca.se, but Webber cites no authority suggesting that any post-accident alcohol consumption automatically requires exclusion of the results of an in-toxilyzer test. Indeed, such a rule would encourage post-accident consumption as a way to thwart prosecution. In this case, Webber’s test results were properly admitted.
¶25. As the majority discusses, the City of Ridgeland repeatedly has failed to file briefs in DUI cases in this Court and the Supreme Court, including in response to a specific order in this case. Yet, in almost all prior cases, we have still affirmed the conviction because it could be affirmed with confidence despite the City’s failure. See, e.g., Nolan v. State, 182 So.3d 484, 488 (¶ 6) & n. 1 (Miss.Ct.App.2016); Woods v. State, 175 So.3d 579, 580-81 (¶ 9) & n. 2 (Miss.Ct.App.2015); Drabicki v. City of Ridgeland, 130 So.3d 113, 118 (¶ 19) (Miss.Ct.App.2013). When we have reversed, we did so because we could not “confidently affirm the defendant’s conviction” on the merits. Clack v. City of Ridgeland, 139 So.3d 778, 782 (¶ 22) (Miss.Ct.App.2014). I am not aware of a prior such case in which we have reversed the conviction without regard to the merits, as the majority does now. Instead, we have reasoned that the public interest in “[e]nsuring that motorists ... refrain from operating motor vehicles while under the influence of alcohol ... warrants] our review, even in the absence of the [City’s] brief.” Lobo v. City of Ridgeland, 135 So.3d 148, 152 (¶ 12) (Miss.Ct.App.2013); cf. Young v. United States, 315 U.S. 257, 258-59, 62 S.Ct., 510, 86 L.Ed. 832 (1942) (“[0]ur judicial obligations compel us to examine independently the errors confessed” because “[t]he public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding.”).
¶ 26. I do not believe that the Supreme Court’s recent order in Norman v. State, No. 2014-KM-01789-SCT, gives any indication that we should change our approach to the merits of such cases. In Norman, Boty McDonald finally appeared on behalf of the City (by order of the Supreme *933 Court and on threat of sanctions), he confessed prejudicial error in the trial court, and the City specifically requested that the defendant’s conviction be reversed. Here, in contrast, McDonald ignored this Court’s order, and the City has again failed to file any brief. That likely justifies sanctions against the City and/or McDonald, but I do not believe that it is a basis for setting aside a valid DUI conviction that is supported by sufficient evidence. • It is also arbitrary for Webber to receive a windfall — where a series of similarly situated defendants/appellants have not — simply because his appeal happens to be the one in which the Court has finally had enough of the City’s neglect of its obligations and disrespect for this Court. I would affirm Webber’s convictions and address the issue of possible sanctions separately. Accordingly, I respectfully dissent.
IRVING, P.J., BARNES AND CARLTON, JJ., JOIN THIS OPINION; FAIR, J., JOINS THIS OPINION IN PART.

. Archie v. City of Canton, 92 So.3d 1279, 1282 (¶ 10) (Miss.Ct.App.2012) (quoting Thornton v. Holloway, 49 So.3d 125, 128-29 (¶ 10) (Miss.Ct.App.2010)) (alteration omitted); see Chatman v. State, 761 So.2d 851, 854.(¶ 9) (Miss.2000) (holding that the State’s failure to file a brief does not require "automatic reversal ... if this Court can say with confidence that the [conviction] should be affirmed”); McCollum v. State, 186 So.3d 948, 953 (¶ 19) (Miss.Ct.App,2016) (holding that even if the State confesses error, "we have an obligation to examine the record to'determine whether the conviction should stand or be reversed”).

. Berryman testified that he found Webber on his way home from work around 4 a.m., but that was contradicted by Webber’s own testi- ■ mony that; he did not leave his house until around 5 a.m. It was also contradicted by Officer Webb’s testimony that the crash had not occurred when he drove by the same location between 4:40 and 5 a.m.

. Webber was convicted under both subsection (a) (or "common law DUI”) and subsection (c) (or "per se DUI”) of Mississippi Code Annotated section 63-11-30(1) (Rev.2013). The trial judge specifically found that "even if , [he] were to reject all evidence regarding the charge of [a] subsection C violation, ... the State ha[d] more than proven its case beyond a reasonable doubt under subsection A.” The circuit court also affirmed the conviction under both subsections.