**STATE of Minnesota, Respondent,**

v.

**Mark Joseph BASHAW, Appellant.**

No. C2–94–964.

Court of Appeals of Minnesota.

April 25, 1995.

Hubert H. Humphrey, III, Minn. Atty. Gen., St. Paul, Julius E. Gernes, Winona County Atty., Henry T. Reimer, Asst. Winona County Atty., Winona, for respondent.

Karin L. Sonneman, Asst. Public Defender, Sonneman & Sonneman, P.A., Winona, for appellant.

Considered and decided by PETERSON, P.J., HUSPENI and CRIPPEN, JJ.

## OPINION

PETERSON, Judge.

On appeal from his conviction for driving with an alcohol concentration of 0.10 or more, Mark Bashaw argues that the district court erred in relying on Minn.Stat. § 169.121, subd. 2 (1992) to exclude evidence of his postaccident alcohol consumption for failure to give notice of this evidence to the state. Bashaw argues that Minn.Stat. § 169.121, subd. 2 does not apply here because he offered the postaccident drinking evidence to disprove an essential element of the offense of driving with an alcohol concentration of 0.10 rather than to prove an affirmative defense to the offense of driving with an alcohol concentration of 0.10 as measured within two hours of driving. We reverse and remand for a new trial.

## FACTS

At 6:25 p.m. on December 26, 1992, Jane Husman saw appellant Mark Bashaw's car disabled on the side of the road and stopped to help. When Winona County Deputy Sheriff Ronald Ganrude arrived at the scene, Bashaw said that he was driving around a corner on an icy road when the car spun out, went into the ditch, and hit an embankment. Bashaw was able to get the car out of the ditch and drive a few more miles before it stopped.

Ganrude saw two or three empty beer cans in the ditch beside the car. Deputy Tim O'Brien found four empty beer cans on the floor of the car. Based on their observations of Bashaw and Bashaw's failure to pass a field sobriety test, Ganrude and O'Brien both concluded that Bashaw was under the influence of alcohol. Bashaw agreed to take an intoxilyzer test. The test began at 8:24 p.m. The reported result was 0.12. Meanwhile, O'Brien went to the scene of the accident and found that the road was dry and covered with some sand.

At trial, Bashaw testified that he went to his brother-in-law's farm at 11:30 a.m. on December 26, 1992 to celebrate Christmas with his wife's family. Bashaw said that over the entire day, he drank four beers and half of a Tom and Jerry. The family ate around noon and then had sandwiches around 5:00 p.m. Bashaw said that he left the farm around 5:30 or 5:45 p.m. As he drove, Bashaw was not paying attention to the road because he was arguing with his wife and his two children were arguing in the back seat. Bashaw said he hit a lot of sand on the road as he went around a corner and went into the ditch. He mistakenly thought the sand was ice. The car hit an embankment and Bashaw's wife hit her head. Bashaw got the car out of the ditch and saw a hole in the radiator. He decided to drive home to get his other car and then take his wife to the hospital.

Bashaw said that the car stopped five or six miles from the accident scene because it ran out of coolant. Bashaw walked to a nearby friend's house but no one responded to his knock. He then went back to try to start the car but the battery died. He was about to walk to another house when Husman arrived. Bashaw's lawyer asked Bashaw if he had consumed any alcohol after the accident and Bashaw said yes. When Bashaw's attorney asked how much alcohol Bashaw had consumed, the state objected on grounds that notice of the defense of postdriving consumption of alcohol had not been given as required by Minn.Stat. § 169.121, subd. 2 (1992).

The defense made an offer of proof that Bashaw would have testified that he had consumed alcohol after the accident but before he stopped driving. The defense continued:

> And what my expert would have testified to would be that in doing a retrograde [extrapolation test] from the .12 of the test, because it was done so late, I mean it was done, I would argue, more than 2 hours after the actual driving of [Bashaw], that for each beer he consumed at that late time of driving, that would reduce the .12

to—take off .03 for each beer that he consumed. And he would have testified that he consumed at least a half of a can of [beer] and so that would have reduced it below a .10 level at the time of actual driving. His alcohol—blood alcohol concentration level, if it had been tested at that time, would have been below .10.

The district court held that Minn.Stat. § 169.121, subd. 2 required the postaccident drinking evidence to be suppressed because Bashaw had not given notice of the evidence to the state. The court stated:

[T]he State says he drove in the ditch * * * because he was under the influence. Any drinking thereafter would have to be noticed to the State so that they are not ambushed by this defense. The statute clearly sets that out.

The court stated that the expert could testify about matters other than Bashaw's postaccident drinking but the defense rested. The jury found Bashaw guilty of driving with an alcohol concentration of 0.10 or more but not guilty of driving while under the influence of alcohol or of driving with an alcohol concentration of 0.10 or more as measured within two hours of driving.

### ISSUE

Did Minn.Stat. § 169.121, subd. 2 (1992) require evidence of Bashaw's postaccident drinking to be excluded because notice of this evidence was not given to the prosecution?

### ANALYSIS

■ Generally, "[r]ulings on evidentiary matters rest within the sound discretion of the trial court." *Caldwell v. State*, 347 N.W.2d 824, 826 (Minn.App.1984). Here, however, the district court found that Minn. Stat. § 169.121, subd. 2 (1992) required it to suppress this evidence. Interpretation of a statute is a question of law subject to de novo review. *Schumacher v. Ihrke*, 469 N.W.2d 329, 332 (Minn.App.1991).

■ The object of statutory interpretation is to determine and give effect to the legislature's intent. Minn.Stat. § 645.16 (1992). When the words of a statute are unambigu-

ous, we must give effect to their plain meaning. *Tuma v. Commissioner of Economic Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

Minn.Stat. § 169.121, subd. 1 (1992) provides it is a crime for anyone to drive, operate, or be in physical control of a motor vehicle:

(a) when the person is under the influence of alcohol;

\* \* \* \* \* \*

(d) when the person's alcohol concentration is 0.10 or more; [or]

(e) when the person's alcohol concentration as measured within two hours of the time of driving is 0.10 or more.

Minn.Stat. § 169.121, subd. 2 provides:

If proven by a preponderance of the evidence, it shall be an affirmative defense to a violation of subdivision 1, clause (e), that the defendant consumed a sufficient quantity of alcohol after the time of actual driving, operating, or physical control of a motor vehicle and before the administration of the evidentiary test to cause the defendant's alcohol concentration to exceed 0.10. Provided, that this evidence may not be admitted unless notice is given to the prosecution prior to the omnibus or pretrial hearing in the matter.

Bashaw argues that the district court erred in relying on Minn.Stat. § 169.121, subd. 2 to exclude evidence of his postaccident drinking for failure to give notice because this statute requires notice only when the evidence is offered to prove an affirmative defense to a violation of Minn.Stat. § 169.121, subd. 1(e). Bashaw argues that Minn.Stat. § 169.121, subd 2 did not apply here because the evidence of his postaccident drinking was introduced to disprove the charge of driving with an alcohol concentration of 0.10 or more in violation of Minn.Stat. § 169.121, subd. 1(d).

■ Minn.Stat. § 169.121, subd. 2 requires notice to the state when evidence of postdriving drinking is offered to prove an affirmative defense to a violation of Minn.Stat. § 169.121, subd. 1(e). *See State v. Brechon*, 352 N.W.2d 745, 749 (Minn.1984) (affirmative defense requires defendant to produce evi-

dence raising defense and to prove defense by preponderance of evidence); *see also State v. Parker*, 417 N.W.2d 643, 645 (Minn. 1988) (when defendant is charged with violation of Minn.Stat. § 169.121, subd. 1(e), Minn.Stat. § 169.121, subd. 2 permits affirmative defense of postdriving drinking to be raised only when pretrial notice given). But the fact that Minn.Stat. § 169.121, subd. 2 provides that failure to give notice renders evidence of post-driving drinking inadmissible to prove an affirmative defense to Minn. Stat. § 169.121, subd. 1(e) does not mean that failure to give notice renders this evidence inadmissible for other purposes. Under the plain language of Minn.Stat. § 169.121, subd. 2, failure to give notice does not preclude admission of alcohol consumption evidence for any purpose other than proving the affirmative defense to Minn.Stat. § 169.121, subd. 1(e).[1]

◼ Here, the defense's offer of proof demonstrates that the postaccident drinking evidence was not offered to prove an affirmative defense to a violation of Minn.Stat. § 169.121, subd. 1(e). Instead, the evidence was offered to disprove that Bashaw's alcohol concentration while driving was 0.10 or more.

◼ The state has the burden of proving all the essential elements of an offense. *Brechon*, 352 N.W.2d at 750. An alcohol concentration of 0.10 or more is an essential element of the offense of driving with an alcohol concentration of 0.10 or more. 10A *Minnesota Practice*, CRIMJIG 29.08 (1990); *see also Parker*, 417 N.W.2d at 645 (state's burden of proof for offense of driving with an alcohol concentration of 0.10 or more includes establishing that defendant's alcohol concentration at time of driving was 0.10 or more). The evidence of Bashaw's postaccident drinking therefore tends to disprove an essential element of the offense of driving with an alcohol concentration of 0.10 or more, that Bashaw had an alcohol concentration over 0.10 when driving a motor vehicle. *See Brechon*, 352 N.W.2d at 749–50 (explaining distinction between affirmative defense, defense, and element of state's case). Because

the evidence of Bashaw's postaccident drinking was offered to disprove an essential element of the offense of violating Minn.Stat. § 169.121, subd. 1(d) and not to prove an affirmative defense to a violation of Minn. Stat. § 169.121, subd. 1(e), Minn.Stat. § 169.121, subd. 2 did not require suppression of this evidence for failure to give notice to the state. *See State v. Shepard*, 481 N.W.2d 560, 563 (Minn.1992) (defendant is always free to present evidence bearing on how test result relates to time of driving).

The state argues that its case was based on Bashaw's preaccident driving and that when Bashaw got out of his car at the accident scene, he stopped driving. Therefore, any alcohol consumption after the accident is also consumption after the time of actual driving and the literal language of Minn.Stat. § 169.121, subd. 2 requires exclusion of the alcohol consumption evidence because notice was not given. But there was no complaint in this case and the tab charge did not specify the time of the offense or in any way limit the charge of violating Minn.Stat. § 169.121, subd. 1(d) to driving that preceded the accident. The jury could have concluded that Bashaw's alcohol concentration reached 0.10 only after the accident and found him guilty of violating Minn.Stat. § 169.121, subd. 1(d) on that basis.

◼ Even if the jury considered only the driving that preceded the accident, the state still had the burden of showing that Bashaw's alcohol concentration was 0.10 or greater when he was driving before the accident. The evidence of Bashaw's alcohol consumption between the time of the accident and the time the intoxilyzer test was administered still would be evidence tending to disprove an essential element of the offense of driving with an alcohol concentration of 0.10 or more. Evidence of alcohol consumption after the accident and before the test tends to disprove that Bashaw's alcohol concentration at the time of the test reflects his alcohol concentration before the accident.

---

1. To give effect to Minn.Stat. § 169.121, subd. 2, the district court should instruct the jury not to consider the postdriving drinking evidence in relation to a violation of Minn.Stat. § 169.121, subd. 1(e) when the defendant failed to give the required notice.

208

■ A harmless error analysis can apply to the erroneous exclusion of defense evidence. *State v. Post*, 512 N.W.2d 99, 102 (Minn.1994). The correct inquiry is

whether, "assuming that the damaging potential of the [excluded evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."

*Id.* (alteration in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

■ Here, excluding evidence of Bashaw's postaccident drinking was not harmless. The expert would have relied on Bashaw's postaccident drinking to testify that the retrograde extrapolation test showed Bashaw had an alcohol concentration of less than 0.10 at the time of driving. It is possible that the jury would have believed the expert's testimony and acquitted Bashaw of the offense of driving with an alcohol concentration of 0.10. Because the verdict may have been different if evidence of Bashaw's postaccident drinking and the retrograde extrapolation test had not been excluded, exclusion of this evidence was not harmless error.

### DECISION

Minn.Stat. § 169.121, subd. 2 did not require suppression of evidence of Bashaw's postaccident drinking for failure to give notice to the state because this evidence was offered to disprove an essential element of the offense of driving with an alcohol concentration of 0.10 or more rather than to prove an affirmative defense to a violation of Minn. Stat. § 169.121, subd. 1(e). The exclusion of the evidence was not harmless error because the verdict might have been different if this evidence had been admitted. We therefore reverse Bashaw's conviction and remand for a new trial. Because Bashaw was acquitted of violating Minn.Stat. § 169.121, subd. 1(a), (e), we remand for a new trial only on the charge of violating Minn.Stat. § 169.121, subd. 1(d).

**Reversed and remanded for a new trial.**