*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2309**

State of Minnesota,
Respondent,

vs.

Joseph Ricardo Mastrey,
Appellant.

**Filed December 15, 2014
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27-CR-12-31036

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Zenaida Chico, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bethany L. O'Neill, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Crippen, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant challenges his DWI convictions, arguing that the evidence was insufficient to prove that he drove while under the influence of alcohol. We affirm.

**FACTS**

This case arises from property damage that occurred in the early morning hours of July 28, 2012, after which the state charged appellant Joseph Ricardo Mastrey with (1) third-degree DWI in violation of Minn. Stat. § 169A.20, subd. 1(5) (2010); (2) third-degree DWI in violation of Minn. Stat. § 169A.20, subd. 1(1) (2010); and (3) careless driving in violation of Minn. Stat. § 169.13, subd. 2 (2010). The state later amended the complaint to include a misdemeanor charge of failure to notify an owner of property damage in violation of Minn. Stat. § 169.09, subd. 5 (2010).

M.D. testified that he was sleeping in the front bedroom of his mother's home when he heard Mastrey (the next-door neighbor), his wife, and two other people get into a car around 2:00 a.m. M.D. heard the group return 15 to 20 minutes later and observed the group "[d]rinking [beer], talking, laughing, [and] making noise" outside. He then saw Mastrey "and his male friends" leave "through the gate," and heard an engine start, "a revving of the motor," "wheels spinning, screeching tires, [and] a crash or smash-type sound."

B.C. testified that he was watching a movie at his grandmother's house when he heard the crash. He ran outside to see if anyone was injured and saw "a nice new hole on the corner" of his grandmother's garage. B.C. also observed "black tire marks going

directly from [Mastrey's] driveway across the alleyway and directly into [the] garage." B.C. spoke with M.D., who had exited his mother's home after the crash and called 911. During the call, B.C. stated that his neighbor's husband (Mastrey) had crashed into the garage and had taken off because that was "what everybody else who heard it said." B.C. also indicated that Mastrey was drunk, but admitted at trial that he had heard this from M.D. and that he did not know whether Mastrey was actually drunk at the time of the 911 call.

While on the phone with the dispatcher, B.C. observed Mastrey "pulling up right now" in a blue pickup truck and parking in front of Mastrey's house. B.C. knew that the vehicle belonged to Mastrey because he had "seen him enter and exit the vehicle on the driver's side many times over the years." He identified Mastrey as the driver and recognized the passenger, but did not know the passenger's name. M.D. also saw the blue pickup that he had seen Mastrey drive on prior occasions. M.D. saw two men in the vehicle, was "100 percent positive" that Mastrey was the driver, and was "very sure" that he saw Mastrey exit from the driver's side of the vehicle.

M.D. then approached Mastrey and asked him "what happened." According to M.D., Mastrey responded "[t]hat he just didn't do it." While they were talking, M.D. observed that Mastrey "appeared to be drunk [and] smelled of liquor." Mastrey's speech was "slurred" and his walk was "[a] little side to side."

Mastrey's friend, A.H., provided a different version of events. A.H. testified that he was at Mastrey's home on July 28 with "maybe three other people." He thought that "someone asked [Mastrey] for a ride to a store or something." When Mastrey returned,

3

he told A.H. that he "was in a fight with his neighbor." A.H. then saw Mastrey pour himself two small glasses of whiskey and go back outside. These drinks were the only drinks that A.H. saw Mastrey consume that evening. A.H. admitted on the stand that "some of this has kind of been reminded to me." A.H. explained that conversations with Mastrey and Mastrey's wife helped him remember what happened during the night in question and stated, "I know what I've been told. I can't really say for myself."

Minneapolis Police Officers Nicholas Englund and Jesse Standal responded to a call from dispatch around 3:00 a.m. "regarding a property damage accident." Officer Englund observed damage to the front passenger side of the blue pickup "that would be consistent with it running into a building" along with glass and pieces of the truck on the ground. He also observed damage to the garage that "matched the same height" as the pickup's headlight. The officers ran the truck's license plate and learned that Mastrey was the registered owner. Officer Standal took pictures of the pickup and the damage to the garage. While doing so, he "placed [his] hand on the hood and the engine area was still radiating heat, which led [him] to believe that the vehicle had recently been driven."

According to Officer Englund, he located Mastrey and asked him if he had driven his truck "within the last 20 or 30 minutes, and he said that he hadn't driven his truck, nor had anyone driven his truck, in that time." During this conversation, Officer Englund observed "slurred speech and watery eyes." He asked Mastrey if he had been drinking, and Mastrey responded that he had had two beers. Officer Englund then conducted a field sobriety test and concluded that Mastrey was intoxicated. Mastrey refused to take a preliminary breath test and was arrested.

4

Officer Englund transported Mastrey to the Minneapolis Chemical Testing Unit and read him the implied-consent advisory at 4:10 a.m. Mastrey consulted with a lawyer and agreed to provide a urine sample. After he was unable to provide a sample, Mastrey agreed to provide a blood sample. At trial, the parties stipulated that Mastrey agreed to provide a blood sample at 5:13 a.m. and that the sample revealed an alcohol concentration of .19. The jury found Mastrey guilty of all three counts in the original complaint and not guilty of the failure-to-notify charge. This appeal followed.

## D E C I S I O N

Mastrey argues that his two DWI convictions must be reversed because the evidence was insufficient to prove that he drove while under the influence of alcohol.[1] "In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). "[T]his court views the evidence in the light most favorable to the jury's verdict, assuming the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "This is especially true where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses

---

[1] Mastrey does not challenge his careless-driving conviction on appeal. He only argues that the evidence was insufficient to show that he drove while under the influence of alcohol. A conviction for careless driving does not require evidence of driving under the influence. *See* Minn. Stat. § 169.13, subd. 2.

is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980).

The parties disagree regarding the test we should apply on appeal. Mastrey argues that the circumstantial-evidence analysis applies, while the state argues that there is direct evidence supporting Mastrey's convictions. Direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Black's Law Dictionary* 636 (9th ed. 2009). Circumstantial evidence is "[e]vidence based on inference and not on personal knowledge or observation." *Id.* "[A] conviction based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994).

## I.      Third-Degree DWI – Alcohol Concentration of .08 Within Two Hours

To convict Mastrey under Minn. Stat. § 169A.20, subd. 1(5), the state must prove that (1) Mastrey drove a motor vehicle; (2) his alcohol concentration was .08 or more within two hours of driving the motor vehicle; and (3) the driving occurred on or about July 28, 2012 in Hennepin County. *See* 10A *Minnesota Practice*, CRIMJIG 29.12 (2006).

Mastrey challenges the sufficiency of the evidence for the first element and argues that the evidence of his driving a motor vehicle was only circumstantial.[2] We disagree. The record contains direct evidence that Mastrey drove a motor vehicle. While he was on

---

[2] Even though Mastrey's blood test appears to have occurred more than two hours after the period of Mastrey's driving, Mastrey does not challenge the timing of the blood test. Mastrey therefore does not challenge the second element under subdivision 1(5).

6

the phone with the 911 dispatcher at 3:02 a.m., B.C. observed Mastrey driving his blue

pickup back to his house and identified Mastrey as the driver. M.D. also saw Mastrey's

pickup return home. M.D. was "100 percent positive" that Mastrey was the driver and

"very sure" that Mastrey exited from the driver's side of the pickup. B.C. and M.D.

provided direct evidence that Mastrey drove a motor vehicle on July 28. *See State v.*

*Williams*, 337 N.W.2d 387, 389 (Minn. 1983) ("Direct evidence is the testimony of a

person who perceived the fact through his senses, and testifies to it, or physical evidence

of the fact itself."). This direct evidence is sufficient to sustain Mastrey's conviction

under section 169A.20, subdivision 1(5).[3]

## II.     Third-Degree DWI – Operating a Motor Vehicle Under the Influence of Alcohol

To convict Mastrey under Minn. Stat. § 169A.20, subd. 1(1), the state must prove

that (1) Mastrey drove a motor vehicle; (2) while under the influence of alcohol; and

(3) on or about July 28, 2012 in Hennepin County. *See* 10A *Minnesota Practice*,

CRIMJIG 29.02 (2006). As stated above, there is direct evidence that Mastrey drove a

motor vehicle on July 28.

---

[3] There is some reference in the parties' briefs to an affirmative defense that Mastrey's test result was caused by his consumption of alcohol after driving. *See* Minn. Stat. § 169A.46, subd. 1 (2010). Because Mastrey did not provide the required notice below, *see id.*, or raise this defense before the district court, Mastrey has waived this affirmative defense to the charge under subdivision 1(5). *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (explaining that an appellate court will not consider issues that were not raised before the district court). But Mastrey can introduce evidence of his post-driving consumption of alcohol as a defense to the charge under subdivision 1(1). *See* Minn. Stat. § 169A.46, subd. 1; *State v. Bashaw*, 531 N.W.2d 203, 207 (Minn. App. 1995) (analyzing previous versions of the statutes).

Mastrey argues that the evidence of his driving under the influence of alcohol was circumstantial and insufficient. For example, Mastrey points to B.C.'s admission that he told the 911 dispatcher that Mastrey was drunk based on his conversation with M.D. and that he did not actually know whether Mastrey was drunk at that time. *See id.* ("It is not unlawful to drink alcoholic beverages and then drive a motor vehicle. The prohibition is against driving a motor vehicle while under the influence of alcohol.").

But we conclude that the record not only contains direct evidence that Mastrey drove a motor vehicle on July 28, but also that he was under the influence of alcohol while doing so. M.D. testified that he saw the group at Mastrey's home drinking beer. He then saw Mastrey leave "through the gate" and heard an engine start and then a crash. M.D. later saw Mastrey drive home and exit from the driver's side of his pickup. Immediately after observing Mastrey return home, M.D. spoke to Mastrey and determined that Mastrey "appeared to be drunk." M.D. testified that he smelled liquor, that Mastrey's speech was "slurred," and that Mastrey's walk was "a little side to side." These observations are direct evidence that Mastrey was under the influence of alcohol. *See Williams*, 337 N.W.2d at 389 (defining direct evidence); *see also State v. Stokes*, 354 N.W.2d 53, 56 (Minn. App. 1984) (characterizing testimony that a witness smelled alcohol and observed slurred speech, bloodshot eyes, and unsteady movements as direct evidence of these conditions).

Mastrey also argues that A.H. provided direct evidence that Mastrey drank only after driving. But, in convicting Mastrey under section 169A.20, subdivision 1(1), the jury necessarily believed the state's witnesses and disbelieved A.H.'s conflicting

8

testimony.  *See Moore*, 438 N.W.2d at 108.  Viewing the evidence in the light most favorable to the jury's verdict, *see id.*, we conclude that there was sufficient direct evidence to convict Mastrey under section 169A.20, subdivision 1(1).

Even if the direct evidence was insufficient, the remaining evidence satisfies the heightened test for circumstantial evidence.  *See State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (stating that circumstantial evidence "warrants heightened scrutiny").  We apply a two-step analysis when examining the sufficiency of circumstantial evidence.  *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).  "The first step is to identify the circumstances proved.  In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate."  *Id.* at 598-99 (citation and quotation omitted).  "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt."  *Id.* at 599 (quotation omitted).  "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt."  *Al-Naseer*, 788 N.W.2d at 473 (quotation omitted).

Viewing the evidence in the light most favorable to the verdict, the circumstances proved are as follows.  M.D. saw the group at Mastrey's home drinking beer.  He then saw Mastrey leave "through the gate" and heard an engine start and a crash.  B.C. noticed tire tracks leading from the damaged garage to Mastrey's driveway.  Both B.C. and M.D. saw Mastrey's blue pickup return to his house, and both identified Mastrey as the driver.

9

Immediately after observing Mastrey return home and exit from the driver's side of his vehicle, M.D. spoke to Mastrey, who slurred his speech and smelled of liquor. Officer Englund also observed that Mastrey had slurred speech and watery eyes, and Mastrey admitted to Officer Englund that he had consumed two beers. Finally, Mastrey failed a field sobriety test, consented to a blood sample, and had an alcohol concentration of .19 at 5:13 a.m.

Mastrey argues that the circumstances proved are consistent with the rational hypothesis that he drank alcohol only after driving. But we identify the circumstances proved "in the light most favorable to the verdict and assume that the jury believed the [s]tate's witnesses and disbelieved the defense witnesses." *Silvernail*, 831 N.W.2d at 599 (quotation omitted). Viewing the circumstances proved in the light most favorable to the verdict, the jury disbelieved A.H.'s testimony that Mastrey drank only after driving. A.H.'s testimony is therefore not a proved circumstance, and the proved circumstances are inconsistent with Mastrey's hypothesis that he drank alcohol only after driving.

Finally, Mastrey argues that, because the jury found him not guilty of failure to notify an owner of property damage, the jury must have concluded that someone else was driving the pickup. The jury was instructed that the elements of this charge were that (1) Mastrey drove a vehicle that collided with property; (2) there was some damage to the property as a result of the collision; (3) Mastrey knew he was involved in an accident; (4) Mastrey failed to take reasonable steps to locate and notify the owner; and (5) the act took place on or about July 28, 2012 in Hennepin County. *See* Minn. Stat. § 169.09, subd. 5. In acquitting Mastrey of this charge, the jury simply concluded that the state

failed to produce sufficient evidence of Mastrey's guilt beyond a reasonable doubt. The jury did not necessarily conclude that Mastrey was not driving. Given the fact that the jury convicted Mastrey of two DWI charges and careless driving, Mastrey's hypothesis that the jury concluded he was not driving for the failure-to-notify charge is not rational. *See Silvernail*, 831 N.W.2d at 599.

**Affirmed.**