ROBERTS, J.,
for the Court:
¶ 1. For the fourth time in less than a year, this Court is confronted with an appeal of a conviction from the City of Ridge-land in which the City has failed to file an appellate brief.[1] Incident to a de novo bench trial, the County Court of Madison County found Daniel Clack guilty of first-offense driving under the influence (DUI) and careless driving. During a hearing on Clack’s posttrial motion for a judgment notwithstanding the verdict (JNOV) or, al *779 ternatively, a new trial, city prosecutor Boty McDonald admitted that he had unintentionally failed to provide Clack with potentially exculpatory video evidence per Clack’s discovery request. Even so, the county court denied Clack’s posttrial motions. The Madison County Circuit Court affirmed the county court’s judgment. Clack appeals.
¶ 2. As previously mentioned, the City has failed to file an appellate brief. Because the prosecution conceded that it failed to provide evidence that was potentially exculpatory, we cannot confidently affirm the circuit court’s judgment. Accordingly, we reverse the circuit court’s judgment and remand this matter to its active trial docket.
FACTS AND PROCEDURAL HISTORY
¶ 3. At approximately 3 a.m. on June 22, 2008, Officer Daniel Soto of the Ridge-land Police Department saw Clack driving on Pear Orchard Road in Ridgeland, Mississippi. According to Officer Soto, Clack was driving carelessly. Officer Soto stopped Clack. Ultimately, Officer Soto arrested Clack for DUI.
¶ 4. Clack later went before the Ridge-land Municipal Court, where he faced charges for first-offense DUI and careless driving. Clack pled “no contest” to both charges. He then appealed to the county court. Clack filed a motion for discovery. Clack’s eleven-page discovery request was comprehensive. Among many other things, Clack requested that the prosecution disclose “[a]ny information that would tend to exculpate [Clack] to any degree.” During November 2009, Clack received a de novo bench trial before the county court.
¶ 5. The prosecution called Officer Soto as its first and only witness. Officer Soto testified that Clack’s Toyota Tundra pickup truck was “weaving in the roadway.” Officer Soto also testified that Clack stopped in the road “for a matter of seconds.” After Clack turned off of Pear Orchard Road “without using [his] blinker,” Officer Soto stopped him.
¶ 6. According to Officer Soto, he smelled alcohol in Clack’s pickup truck. Clack told Officer Soto that he had consumed three beers earlier that night. Officer Soto told Clack to get out of his pickup truck. Clack complied. Officer Soto then asked Clack whether he was lost. Officer Soto also asked Clack what he was doing in the area. Clack said that he was on his way to visit a friend’s apartment in the area. Officer Soto administered a portable breath test, which returned positive results for the presence of alcohol.
¶ 7. Next, Officer Soto offered Clack a series of field sobriety tests. Officer Soto testified that Clack displayed three of eight possible indicators of impairment when he took the “walk-and-turn” test. And Clack displayed two of four possible indicators of impairment when he took the “stand-on-one-leg” test. Consequently, Officer Soto arrested Clack and drove him to the Ridgeland Police Department. Officer Soto administered the Intoxilyzer 8000 test, which indicated that Clack’s blood-alcohol content was .13 percent.
¶ 8. The prosecution did not present video evidence of Officer Soto’s stop of Clack. During direct examination, Officer Soto testified that his patrol car was not outfitted with video equipment during June 2008. Officer Soto reiterated his testimony during cross-examination. The prosecution rested its case-in-chief after Officer Soto testified.
¶ 9. After Officer Soto left the courtroom, the prosecutor announced that he *780 and Clack’s attorney had reached a stipulation. The prosecutor then stated:
[I]n June ... 2008, Ridgeland patrol cars did have the ability to video stops that were made in the field, including cars that Officer Soto drove. We do not know if the particular car he was in — if the video was operable, but that’s ... because there is no audit trail on this system that will explain when video was running and when it was captured and when it was not.
But, first, [we] stipulate that there was video capability in Ridgeland patrol cars at the time; that the way it was operated is the video automatically— when blue lights were engaged by an officer, including Officer Soto, the video would back up 30 seconds. It would preserve and capture anything that it had seen 30 seconds prior to the blue lights coming on. Then to stop the camera, the officer — in this case, Officer Soto — in the field would have to manually stop the video.
[[Image here]]
Upon arrival at the police station after the arrest when the patrol car pulled into the sally port, which is, in effect, the garage, any video was automatically uploaded, so there was nothing required to be done by the officer after pushing the stop button in the patrol vehicle at the conclusion of the arrest for the video to be uploaded to the server.
In this case, [Clack’s attorney], on behalf of his client, by traditional discovery demands requested video. The Ridgeland Police Department, after reviewing the files, did not produce any because it said there was none that it saw available. That does not mean that there was never any video, but none was produced, and the police department is incapable of telling the defendant if any was ever created.
¶ 10. After the prosecution announced the stipulation that Officer Soto’s patrol car had been outfitted with video equipment at the time of Clack’s stop, Clack testified in his defense. Clack disagreed with Officer Soto’s version of the events that led to the traffic stop. Clack denied that he stopped his pickup truck in the middle of the road. Clack also denied that he had been weaving while driving. According to Clack, he was not certain where he needed to turn, so he slowed down to read a street sign. Clack testified that he resumed driving normally when he realized that he had not yet reached his turn. Clack admitted that he turned without using his turn signal, but he testified that there were no other cars around him. Clack went on to testify that Officer Soto drove behind him so fast that Clack “had to literally not stop completely until he was under control or else [Officer Soto] would have rear-ended [him].”
¶ 11. According to Clack, he had talked to Officer Soto “[n]umerous times” after his arrest. Clack said that he and Officer Soto had been in the same bar, and they had “a few drinks together.” Clack testified that Officer Soto had said that he was “going to help [him] out -with” the charges he faced. Clack and Officer Soto exchanged phone numbers, and Officer Soto told Clack that he did not need a lawyer. But during a subsequent encounter in a bar, Clack asked Officer Soto about a video recording of the traffic stop. According to Clack, Officer Soto said that Clack’s attorney had watched the video and Clack was “toast.”
¶ 12. During cross-examination, the prosecution asked Clack what his defense was. Clack responded that Officer Soto had “manufactured” his basis for probable cause. Clack again vigorously denied that he was weaving or that he stopped in the street. Clack rested after he testified.
*781 ¶ 13. The prosecution called Officer Soto as its only rebuttal witness. Officer Soto denied that he had a conversation with Clack regarding “video related to his case.” Officer Soto did not deny that he had encountered Clack after his arrest. According to Officer Soto, he had “arrested over a thousand people in the last couple of years,” and “ftjhat’s the reason [he doesn’t] go out [to bars] anymore.”
¶ 14. The county court found Clack guilty of careless driving and first-offense DUI. The county court fined Clack a total of $950. Although the county court sentenced Clack to forty-eight hours in the county jail, the county court also suspended that sentence and placed him on unsupervised probation for two years.
¶ 15. Clack filed a motion for a JNOV or, alternatively, for a new trial. The county court heard Clack’s motions during April 2010. During the hearing, the prosecution announced that it had obtained the video from Officer Soto’s patrol car. The county court asked whether the video was “potentially exculpatory.” The prosecutor responded, ‘Tes, sir.” However, approximately one year later, the county court denied Clack’s posttrial motions. The county court judge stated that “[t]he video has not been published or otherwise presented to the [c]ourt.”[2] According to the county court, “there has been no showing that the video in question will probably produce a different result or verdict.” (Emphasis in original).
¶ 16. Clack appealed to the circuit court. Initially, the City failed to file a brief. The circuit court ordered the prosecutor to show cause for his failure to file a brief. Eventually, the circuit court financially sanctioned the prosecutor $500 for his failure to show cause. After being sanctioned, the prosecutor finally complied with the circuit court’s instruction to file a responsive brief. Ultimately, the circuit court affirmed the county court’s judgment. Clack appeals.
STANDARD OF REVIEW
¶ 17. Yet again, the City has failed to file an appellee’s brief. “An appellee’s failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed.” Chatman v. State, 761 So.2d 851, 854 (¶ 9) (Miss.2000) (internal citations omitted).
ANALYSIS
¶ 18. Clack argues that Officer Soto did not have reasonable suspicion or probable cause to stop him. According to Clack, Officer Soto manufactured the basis for his stop. Clack also argues that the City violated its Brady obligation when it failed to disclose the video footage from Officer Soto’s patrol car. Our review of Officer Soto’s testimony raises obvious concerns about his veracity and credibility.[3] He testified that his patrol car was *782 not outfitted with video equipment when he stopped Clack. But after Clack was convicted, the prosecution discovered that Officer Soto’s patrol car had been outfitted with video equipment when he stopped Clack, and that the equipment had captured something related to Clack’s stop and arrest. Although it is unclear what the video depicted, the prosecution conceded that it was “potentially exculpatory.” Despite Clack’s request for discovery, the video had not been provided to Clack’s attorney.
¶ 19. Automobile stops must be reasonable. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Generally, a stop is reasonable if a law-enforcement officer has probable cause to believe that a traffic violation has occurred. Id. Officer Soto testified that he stopped Clack because he had been driving carelessly. Clack denied that he had been driving carelessly. As mentioned, the prosecution conceded that the previously undisclosed video footage was “potentially exculpatory.”
¶ 20. The government’s suppression of evidence favorable to the accused violates due process when the evidence is material to his guilt or punishment. Brady, 373 U.S. at 87, 83 S.Ct. 1194. It is irrelevant whether the prosecution acted in good faith or bad faith. Id. After review, we are unable to confidently find that the video does not qualify as impeachment evidence that would undermine the credibility of an important government witness. Such evidence would fall under the Brady rule. See United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (citing Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).
¶ 21. Although the video is not in the record, the City clearly admitted to the county court judge that the video of Officer Soto’s traffic stop was “potentially exculpatory.” Had the City cared enough to file a responsive brief, we might be in a better position to judge the extent of the exculpatory nature of the video of the traffic stop. Unfortunately, the City yet again failed to file a responsive brief.
¶ 22. Because we cannot confidently affirm Clack’s conviction, we reverse the circuit court’s judgment affirming the county court’s decision. Rule 12.03(A) of the Uniform Rules of Circuit and County Court governs circumstances in which a circuit court reviews an appeal from a county court. According to Rule 12.03(A), when a circuit court reviews an appeal from a county court, and the circuit court finds that a new trial is appropriate, “the cause shall be remanded to the docket of the circuit court and a new trial held therein de novo.” Consequently, we remand this matter to the circuit court’s active trial docket.
¶ 23. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING, P.J., BARNES, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ISHEE, J., CONCURS IN PART AND DISSENTS IN PART WITH *783 SEPARATE WRITTEN OPINION. GRIFFIS, P.J., AND CARLTON, J., NOT PARTICIPATING.

. In three recent cases, the City of Ridgeland utterly failed to file an appellee's brief. See Carlson v. City of Ridgeland, 131 So.3d 1220, 1222 (¶ 7) (Miss.Ct.App.2013); Drabicki v. City of Ridgeland, 130 So.3d 113, 118 (¶ 19) (Miss.Ct.App.2013); Lobo v. City of Ridgeland, 135 So.3d 148, 152 (¶ 12) (Miss.Ct.App.2013).

. During the hearing, the county court never asked to review the video. Similarly, the county court did not ask whether the prosecution was able to present the video on the date of the hearing. The prosecutor conceded that Clack was "entitled ... to review that video that was not produced in discovery as required by Brady [v.] Maryland, [373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]." In other words, the prosecutor did not contest the exculpatory nature of the video. During the remainder of the hearing, the county court judge asked for information regarding the manner in which the Ridgeland Police Department stored and cataloged video footage from patrol cars, and the means by which the prosecutor could retrieve such a video.

. Clack’s brief states that Officer Soto’s false testimony "should come to no surprise given the well-publicized perjury lawsuit brought against [Officer] Soto for similar misconduct *782 in the past.” The record presently before us does not contain any reference to previous misconduct on Officer Soto’s part. However, the City did not move to strike Clack’s statement.