# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KM-01649-COA

**LYNDA DIANNE ROBINETTE A/K/A LYNDA ROBINETTE A/K/A LYNDA ROBINETTE-MCNAIR**                                            **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | BOTY MCDONALD |
| CITY PROSECUTOR: | BOTY MCDONALD |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | AFFIRMED CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND FINE OF $700, AND SENTENCE OF FORTY-EIGHT HOURS IN THE CUSTODY OF THE MADISON COUNTY SHERIFF'S DEPARTMENT, WITH THE SENTENCE SUSPENDED FOR TWO YEARS UNLESS SOONER INVOKED; AND CONVICTION OF RUNNING A STOP SIGN AND FINE OF $50; AND CONVICTION OF FOLLOWING TOO CLOSELY AND FINE OF $50 |
| DISPOSITION: | AFFIRMED: 11/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.     In August 2012, Lynda Robinette pleaded no contest in Ridgeland Municipal Court

to driving under the influence, first offense, running a stop sign, and following too closely (tailgating). The municipal court found Robinette guilty of all three offenses. Robinette appealed the municipal court's decision to the County Court of Madison County. After a trial de novo, she was again convicted of all three offenses. Robinette appealed the county court's decision to the Madison County Circuit Court, which affirmed her convictions. Robinette now appeals and asserts that the trial court erred in denying her motion for a directed verdict and in rendering a verdict of guilty because the evidence was insufficient to find her guilty beyond a reasonable doubt.[1] Finding that Robinette is procedurally barred from raising these issues, we affirm the judgment of the circuit court.

FACTS

¶2.     On March 24, 2012, Officer David Mattox with the Ridgeland Police Department was patrolling Rice Road when he observed a vehicle "traveling a little faster than it should have been." Officer Mattox approached the vehicle from behind. The vehicle, driven by Robinette, was traveling at about fifty miles per hour, and there was approximately one car length between her vehicle and the vehicle in front of her. Officer Mattox testified that Robinette was tapping her brakes a lot, an indication that she was following too closely. The vehicles approached a stop sign. The vehicle in front of Robinette came to a complete stop, then proceeded through the intersection. Officer Mattox testified that Robinette yielded, but did not stop. When Officer Mattox saw Robinette roll through the intersection without

---

[1] Robinette's notice of appeal states she was appealing her convictions for DUI, running a stop sign, and tailgating. However, her brief only discusses the DUI and the tailgating convictions.

coming to a complete stop, he activated his blue lights and proceeded to pull her over.

¶3.     Officer Mattox approached Robinette's vehicle and asked Robinette for her driver's license and insurance. Officer Mattox testified that he smelled alcohol coming from inside the vehicle. He testified that when he noticed that Robinette's eyes were bloodshot and glassy, he asked her how much she had to drink that night, to which she replied, "three sips of vodka and a glass of wine with dinner." Officer Mattox testified that "her speech was slurred and thick-tongued." Initially, Robinette had told Officer Mattox that there was no alcohol inside the vehicle, but in a bag inside the vehicle, Officer Mattox found a wine bottle that had been opened with one-fourth of the wine remaining. Suspecting that Robinette was driving under the influence of alcohol, Officer Mattox called DUI Officer Stephen Webb to the scene.

¶4.     Officer Webb approached the vehicle. He testified that "a strong odor of an intoxicating beverage [was] coming from inside [the] vehicle." He asked Robinette to get out of the vehicle. She complied. Officer Webb testified that Robinette's "breath and person reeked of an alcoholic beverage." He testified that her eyes were bloodshot and glassy, and her "[s]peech was somewhat thick-tongued and slurred." Officer Webb asked Robinette how much she had to drink that night, to which she replied that she had one glass of wine at the Zippity Doo Dah parade. He offered Robinette a preliminary breath test, to which she consented, and she tested positive for alcohol. Officer Webb then asked Robinette to perform several sobriety tests. Robinette informed him that she suffered from inner-ear problems, which affected her balance, so he declined to administer the walk-and-turn test and

3

the one-leg-stand test. She submitted to the horizontal-gaze-nystagmus test, where Officer Webb observed all six indicators of impairment. He then placed Robinette under arrest for driving under the influence and transported her to the Ridgeland Police Department. At the Ridgeland Police Department, Officer Webb observed Robinette for twenty minutes prior to offering the Intoxilyzer 8000 test. Robinette consented, and registered a .12 blood-alcohol content.

¶5. On cross-examination, Officer Webb was questioned regarding the twenty-minute observation period. Officer Webb testified that the twenty-minute observation period is required by the state crime lab to ensure that the person to be tested does not ingest anything by mouth, burp, belch, or regurgitate. If the person to be tested does burp or belch, the twenty-minute observation period must start over. Officer Webb testified that he never saw Robinette burp, and he never asked her if she burped. When a portion of the video recording of the twenty-minute observation period – where Robinette puts her hand to her cheek and dips her head – was played, Officer Webb testified, "I'm not sure if you could call -- she said the word 'me,' and then [she] kind of motioned to herself." At this point in the trial, Robinette interjected to make clear that she was saying "excuse me" during that portion of the video. On redirect, Officer Webb testified that he was sitting three feet away from Robinette, and never heard her burp, belch, or regurgitate, and that he had performed hundreds of these observations during his career. At the end of the State's case, Robinette moved for a directed verdict. Her motion was denied.

¶6. Melissa Dempsey, Robinette's friend, testified for the defense. She and Robinette had

met for lunch before marching in the Zippity Doo Dah parade together. For three hours they stood in a parking lot waiting for the parade to begin. Dempsey testified that they did not eat or drink anything while they waited. Once they finally started moving, the parade moved very quickly. Dempsey testified that by the end of the parade, they were practically running. After the parade, Dempsey and Robinette went to the liquor store and each bought a bottle of wine. Using the cups that Dempsey's husband had caught in the parade, they each poured themselves some wine. They put their wine bottles in their cars and went to an outdoor concert. They ate dinner at a sushi restaurant, then parted ways a little after 10 p.m. Dempsey testified that she and Robinette had a plastic cup of wine each, that Robinette was offered something to drink out of a cup during the parade, and that Robinette was not drunk.

¶7.	On cross-examination, Dempsey was asked about the three sips of vodka that Robinette had told Officer Mattox she had consumed. Dempsey testified that she had understood Robinette to have turned the vodka down when it was offered to her during the parade, but if she had consumed any vodka at all, it would have been while they were marching in the parade, and it would have been a very small amount because at the rate they were going, there was no time to stop and drink anything. Dempsey also testified on cross-examination that they each poured their plastic cup of wine from their own bottle, so how Robinette's bottle was only one-fourth full when Officer Mattox found it, she did not know.

¶8.	Robinette testified at trial. She testified that the day of the parade, she woke up at 4:30 a.m. because she had to work. Robinette, a registered nurse, helped deliver six babies before 2 p.m., which is when she left work to get something to eat. She then brought some

5

food home to her sons. Robinette testified that she met Dempsey at Babalu restaurant about 4:30 p.m., then waited for three hours in a parking lot for the parade to start. She testified that she and Dempsey were surrounded by "a bunch of drunk old women." Robinette testified that one of the women was extremely intoxicated and said to her as they were marching, "Oh, you're not having any fun. Here, take a sip of this," and handed Robinette the cup she was holding. To pacify the woman, Robinette put the cup to her lips, and took a sip. She testified that it was "maybe half a teaspoon." Robinette testified she took a sip at 5 p.m., and twice during the parade.

¶9. After the parade, Robinette, Dempsey, and Dempsey's husband and daughter went to see a band that was playing in the Fondren area of Jackson. Robinette and Dempsey went to a liquor store and each bought a bottle of wine. Dempsey's husband gave them the plastic cups he had caught in the parade, and they each poured themselves a cup of wine from their respective wine bottles. Robinette testified that she later measured the plastic cups and found that they held twelve fluid ounces. They recapped the wine bottles and put them in their cars. They ate sushi at a restaurant, then parted ways. Robinette started driving to her boyfriend's house. He was in bed when she arrived, so she left to drive home, talking to him on the phone all the while. As she was driving down Rice Road, she noticed a police car get behind her. Robinette testified that as she approached a stop sign, she "hesitated," which was when the police officer turned on his lights. Robinette pulled over.

¶10. Robinette testified that she suffers from gastroparesis, a medical condition that causes belching and regurgitation. She testified that she burps on a regular basis, "pretty much after

every meal," and that she was burping the night she was pulled over by Officer Mattox. Robinette testified that she did not realize how much she was burping until she watched the video of the Intoxilyzer test. Robinette also testified that she has Meniere's disease, which is an inner-ear disorder that causes loss of equilibrium, vomiting, and nystagmus. She testified that she also suffers from brain seizures, which cause loss of equilibrium as well. At the end of direct examination, she denied that she was under the influence of alcohol.

¶11. On cross-examination, Robinette testified that she takes medication for her brainstem seizures and loss of equilibrium. She testified that she had recently started having drop attacks where she would collapse unexpectedly, so her doctor increased the dosage of her medicine. Regarding Robinette's ability to keep her balance while she is drinking alcohol, the following exchange occurred between her and the State:

Q. Balance doesn't come easy for you?

A. It comes easier once I take my medication, yes. But, no, I'm not the typical person that -- if I didn't take my medication -- no, balance is not easy. And alcohol, if I have not had my medication, will definitely make it worse, which is why I do not drink very much because the next day -- I work six days a week. I work Monday through Friday at [University of Mississippi Medical Center] and Saturdays I work at -- at River Oaks [Hospital], and so, no.

Q. The best result would be just to not drink at all, wouldn't it?

A. Right, which is basically what I do.

Q. But if you have some alcohol --

A. I can have some, yeah, uh-huh.

Q. If you have some alcohol, it's going to contribute more and make more complicated your ability to keep your balance.

7

A. Yes.

Q. And that balance could also impact your ability to drive?

A. It has never impacted my ability. The only time my ability to drive was impacted was before they knew I had brainstem seizures and I would black out on the road. And they diagnosed that in 2006. And since I started taking the seizure medicine in 2006[,] I've not blacked out any. And that did get to where I would not drive on the interstate before I was diagnosed. And after I was diagnosed and they put the shunt in my ear, I'm able to drive perfectly.

¶12. Doctor Steven T. Hayne also testified for the defense. Dr. Hayne was accepted as an expert in the field of clinical and forensic pathology and was asked to review the toxicology report, perform an extrapolation, and explain the difference between the two results if there was one.

¶13. Dr. Hayne testified that he met with Robinette for about three hours and reviewed some of her medical records. He testified that her medical records showed that she suffers from vertigo, Meniere's disease, a seizure disorder, and gastroparesis. He testified that someone with Meniere's disease "should have nystagmus all the time," and that it is exacerbated by stress and other variables.

¶14. Dr. Hayne did a retrograde extrapolation. Based on the information Robinette provided, which included the amount of wine ingested (12 ounces), the time ingested, her weight, and her medical conditions, Dr. Hayne concluded that her blood-alcohol content was 0.03. To explain the difference between the Intoxilyzer results and his retrograde extrapolation, he explained that with gastroparesis, food and fluid remain in the stomach for a considerable amount of time. He testified that it causes reflux, regurgitation, and vomiting.

Dr. Hayne watched the video of the Intoxilyzer test and testified that he saw Robinette burp at least once and saw what he thought was evidence of burping at other times during the twenty-minute observation period. He testified that he also saw Robinette cough between the two samples that were taken. Dr. Hayne testified that because the wine Robinette had consumed was sitting in her stomach, and because she was burping, and also coughed at one point, the alcohol, in its gaseous form, "mixed with pulmonary air [to produce] an erroneous, high level of ethyl alcohol in the pulmonary sample that was tested."

¶15. Dr. Hayne also took issue with the difference between the two samples that were taken. At 11:51 p.m., Robinette registered a .133 blood-alcohol content, and at 11:53 p.m., she registered .125. Dr. Hayne testified that is a 6.4 percent difference, which is unusual. Usually, the difference is one or two percent. He testified that physiologically, one could not have that high of a variance, and that the variance was caused by the mixture of the two gases, the pulmonary air with the gastric gas.

¶16. Robinette was charged with violating Mississippi Code Annotated section 63-11-30(1)(a) and (b) (Rev. 2013). Robinette was ultimately convicted under section 63-11-30(1)(a). As stated previously, she was also convicted of running a stop sign and tailgating.

STANDARD OF REVIEW

¶17. Again, this Court is faced with an appeal in which the City of Ridgeland has failed to file an appellee's brief.[2] "An appellee's failure to file a brief on appeal is tantamount to

---

[2] *See Clack v. City of Ridgeland*, 139 So. 3d 778, 778 (¶1) (Miss. Ct. App. 2014); *Carlson v. City of Ridgeland*, 131 So. 3d 1220, 1222 (¶7) (Miss. Ct. App. 2013); *Drabicki v. City of Ridgeland*, 130 So. 3d 113, 118 (¶19) (Miss. Ct. App. 2013); *Lobo v. City of Ridgeland*, 135 So. 3d 148, 152 (¶12) (Miss. Ct. App. 2013); *see also Woods v. State*, 2014-

confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed." *Chatman v. State*, 761 So. 2d 851, 854 (¶9) (Miss. 2000) (internal citations omitted).

## DISCUSSION

¶18. Robinette argues that the trial court erred in denying her motion for a directed verdict and in rendering a verdict of guilty where the evidence was insufficient to prove beyond a reasonable doubt that she was under the influence of intoxicating liquor. To preserve a challenge to the sufficiency of the evidence, the defendant must first make a motion for a directed verdict at the close of the State's case-in-chief. *Page v. State*, 990 So. 2d 760, 762 (¶9) (Miss. 2008) (citing *Wright v. State*, 540 So. 2d 1, 3 (Miss. 1989)). If that motion is denied, "and the defendant introduces evidence on [her] own behalf, [she] must [then] renew [her] motion for [a ]directed verdict at the close of all the evidence." *Id*. "Failure to do so constitutes a waiver of any challenge on appeal to the sufficiency of the evidence." *Moore v. State*, 131 So. 3d 1228, 1231 (¶5) (Miss. Ct. App. 2013) (citations omitted).

¶19. At the close of the State's case-in-chief, Robinette moved for a directed verdict, which was denied. Robinette then introduced evidence on her own behalf. At the close of all the evidence, Robinette did not renew her motion for a directed verdict. Therefore, Robinette's challenge to the sufficiency of the evidence is procedurally barred.

¶20. Notwithstanding the procedural bar, we can say with confidence that the circuit

KM-01807-COA, 2015 WL 5687818, at *1 n.2 (Miss. Ct. App. Sept. 29, 2015); *Cameron v. State*, 2014-KM-01802-COA, 2015 WL 5687791 at *1 n. 2 (Miss. Ct. App. Sept. 29, 2015).

court's judgment should be affirmed. In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that [s]he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citation and internal quotation marks omitted). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. If the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," we will reverse and render. *Id.* However, if the evidence is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," we will affirm the conviction. *Id*.

¶21.    Robinette was convicted under section 63-11-30(1)(a), which makes it "unlawful for any person to drive or otherwise operate a vehicle within this state who . . . is under the influence of intoxicating liquor[.]" Section 63-11-30(1)(a) is commonly referred to as "common-law DUI." *Gilpatrick v. State*, 991 So. 2d 130, 133 (¶18) (Miss. 2008). "Common[-]law DUI is proven when a defendant's blood[-]alcohol results are unavailable[,] . . . but there is sufficient evidence that the defendant operated a vehicle under circumstances indicating his ability to [operate] the vehicle was impaired by the consumption of alcohol." *Id.* (citation omitted).

¶22. After viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to support Robinette's conviction. Officer Mattox testified that Robinette was speeding, that she was tapping her brakes because she was too close to the vehicle in front of her, and that she failed to stop completely at a stop sign. He testified that he smelled alcohol coming from inside the vehicle. There was testimony that Robinette's eyes were bloodshot and glassy and that her speech was slurred and thick-tongued. Robinette admitted that she had consumed alcohol that evening, and a wine bottle one-fourth full of wine was found inside the vehicle. Officer Webb also smelled the alcohol coming from inside the vehicle, and testified that Robinette's breath and person smelled like alcohol. He administered a preliminary breath test, which tested positive for alcohol.

¶23. While Robinette's medical conditions might explain why Officer Webb observed all six indicators of impairment when he administered the horizontal-gaze-nystagmus test and why she was swaying in the video footage, Robinette admitted that the consumption of alcohol aggravates her symptoms, including the loss of equilibrium. Therefore, we find that the trial court could find that Robinette operated her vehicle under circumstances indicating that her ability to operate her vehicle was impaired by the consumption of alcohol. This issue is without merit.

¶24. Robinette also argues that the evidence was insufficient to support a conviction for following too closely. She argues that the State failed to prove that Robinette operated her vehicle imprudently. Mississippi Code Annotated section 63-3-619 (Rev. 2013) provides, "The driver of a motor vehicle shall not follow another vehicle more closely than is

12

reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

¶25.    The evidence was sufficient to sustain Robinette's conviction for tailgating. Officer Mattox testified that Robinette was traveling at about fifty miles per hour, and there was approximately one car length between her and the car in front of her. He testified that he tells people that as a general rule there should be one car length for every ten miles per hour. Officer Mattox testified that Robinette was tapping her brakes, which was another indication that she was following too closely. And lastly, Robinette was operating her vehicle under the influence of intoxicating liquor. This issue is without merit.

¶26.    **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND FINE OF $700, AND SENTENCE OF FORTY-EIGHT HOURS IN THE CUSTODY OF THE MADISON COUNTY SHERIFF'S DEPARTMENT, WITH THE SENTENCE SUSPENDED FOR TWO YEARS UNLESS SOONER INVOKED; AND CONVICTION OF RUNNING A STOP SIGN AND FINE OF $50; AND CONVICTION OF FOLLOWING TOO CLOSELY AND FINE OF $50 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**ISHEE, J., DISSENTING:**

¶27.    I respectfully dissent from the majority's opinion affirming Robinette's conviction of driving under the influence. First, it should be noted that the State of Mississippi failed to file an appellee's brief in this appeal. "Failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with

confidence, after considering the record and brief of appealing party, that there was no error." *Varvaris v. Perreault*, 813 So. 2d 750, 752 (¶5) (Miss. Ct. App. 2001) (citing *Dethlefs v. Beau Maison Dev. Corp.*, 458 So. 2d 714, 717 (Miss. 1984)). "In order to merit reversal, the appellant's argument should at least create enough doubt in the judiciousness of the trial court's judgment that this Court cannot say with confidence that the case should be affirmed." *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶3) (Miss. Ct. App. 2005) (citation omitted).

¶28.    Robinette was convicted of "operating a vehicle within the state under the influence of an intoxicating liquor," also known as "common-law DUI." As the majority correctly points out, in order for Robinette to be guilty of such, the State was required to produce sufficient evidence showing that on the evening in question, Robinette's "ability to [operate] the vehicle was impaired by [her] consumption of alcohol." *Gilpatrick*, 991 So. 2d at 133 (¶18). I do not believe this burden was met.

¶29.    Officer Mattox testified that when he approached Robinette's vehicle, the smell of an alcoholic beverage was emanating from the vehicle, but it is undisputed that Robinette had consumed a glass of wine, and that there was an open bottle of wine in the car, either of which could have accounted for the smell. Then, Officer Webb first testified that Robinette's "speech was somewhat thick-tongued and slurred," but when asked the degree to which her speech was impaired, he admitted that "she wasn't sloppy slurred, but there was a good – every now and then you would kind of catch it." Upon reviewing the video of the conversations that took place between Robinette and the police officers, I observed no

slurring of her speech.

¶30.     Finally, throughout the record, much was made of the conditions from which Robinette suffers, and how her symptoms might have impacted the outcome of a sobriety test.  She suffers from vertigo and inner-ear problems that affect her balance, so Officer Webb did not administer the walk-and-turn test or the one-leg stand test.  He administered the horizontal-gaze-nystagmus test in which he reportedly observed all six indicators of impairment.  However, Dr. Hayne testified that someone suffering from Meniere's disease, like Robinette, would have nystagmus all of the time.  For these reasons, I cannot say with full confidence that Robinette's conviction should be affirmed.  Accordingly, due to the appellee's failure to file a brief, I would reverse and render the circuit court's judgment.