# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KM-01800-COA

CHARLES WEBBER A/K/A CHARLES M. WEBBER A/K/A CHARLES MARTIN WEBBER                    APPELLANT

v.

STATE OF MISSISSIPPI                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | BOTY MCDONALD |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | CONVICTED OF DUI, FIRST OFFENSE, AND SENTENCED TO FORTY-EIGHT HOURS IN THE CUSTODY OF THE MADISON COUNTY SHERIFF'S DEPARTMENT, AND TO PAY A $1,000 FINE |
| DISPOSITION: | REVERSED AND RENDERED: 08/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### GRIFFIS, P.J., FOR THE COURT:

¶1.     Dr. Charles Webber was convicted of driving under the influence (DUI), first offense, in Madison County Court. Webber appealed to the Madison County Circuit Court, which affirmed the conviction. Aggrieved, Webber now appeals to this Court. We find reason to reverse and render Webber's conviction.

FACTS AND PROCEDURAL HISTORY

¶2. On August 26, 2012, Officer Stephen Webb, a Ridgeland city police officer, came across a crashed vehicle in a neighborhood at approximately six in the morning. The vehicle apparently collided with a tree and a mailbox. Officer Webb did not see anyone in the vehicle but noticed Webber walking in the street.

¶3. When Officer Webb made contact with Webber, he noticed that Webber smelled of alcohol and held an alcoholic beverage. Officer Webb also observed that Webber experienced depth-perception difficulties, was unsteady, and slurred his speech. Officer Webb arrested Webber and performed a breath intoxilyzer test at the police station, which registered a .24% alcohol level.

¶4. Webber entered a nolo contendere, or no contest, plea in Ridgeland Municipal Court. The municipal court found Webber guilty. Webber then appealed this verdict to the Madison County County Court, which held a de novo bench trial on June 26, 2013. The county court found Webber guilty, and the Madison County Circuit Court affirmed.

## DISCUSSION

¶5. Recently, in *Nolan v. State*, 182 So. 3d 484, 488 (¶6) (Miss. Ct. App. 2016), we considered an all-too-familiar problem with appeals that originated in the Municipal Court of the City of Ridgeland:

> As is common with appeals from the City of Ridgeland, City Prosecutor Boty McDonald has failed to file an appellee's brief. "An appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed." *Clack v. City of Ridgeland*, 139 So. 3d 778, 781 (¶17) (Miss. Ct. App. 2014) . . . .

In footnote 1, we cited the cases before this Court where the City of Ridgeland had failed to

2

file a brief:

> *See Robinette v. State*, 2015 WL 7253246, at *5 (¶17) (Miss. Ct. App. 2015);
> *Cameron v. State*, 175 So. 3d 574, 577 n.2 (Miss. Ct. App. 2015); *Woods v.*
> *State*, 175 So. 3d 579, 580 (¶9) (Miss. Ct. App. 2015); *Clack v. City of*
> *Ridgeland*, 139 So. 3d 778, 778 (¶1) (Miss. Ct. App. 2014); *Carlson v. City of*
> *Ridgeland*, 131 So. 3d 1220, 1222 (¶8) (Miss. Ct. App. 2013); *Lobo v. City of*
> *Ridgeland*, 135 So. 3d 148, 152 (¶12) (Miss. Ct. App. 2013); *Drabicki v. City*
> *of Ridgeland*, 130 So. 3d 113, 118 (¶19) (Miss. Ct. App. 2013).

*Nolan*, 182 So. 3d at 488 n.1.

¶6. The City's failure to file a brief was also considered by the Mississippi Supreme Court. In *Norman v. State*, 2014-KM-01789-SCT (Jan. 21, 2016), the supreme court considered an appeal from the Municipal Court of the City of Ridgeland. There, like here, the City failed to file a brief in a timely manner. On October 1, 2015, the supreme court entered the following order:

> A Notice of Appeal was filed in this case on December 19, 2014. On March 6, 2015, the Clerk of this Court issued a Briefing Schedule notifying the parties that, pursuant to Rule 31 of the Mississippi Rules of Appellate Procedure, Appellant's brief and record excerpts were due within forty days of the date of [the] clerk's letter, and Appellee's brief was due within thirty days after service of Appellant's brief. Per Appellant's request for extension of time, this Court granted Appellant until May 15, 2015, to file Appellant's brief, and a letter from the Clerk of this Court was issued notifying all counsel. Appellant's brief was filed on May 15, 2015.
>
> On June 23, 2015, the Clerk of this Court issued a Show Cause Notice to Ridgeland City Prosecutor, Mr. Boty McDonald, notifying Mr. McDonald that . . . Appellee's brief was delinquent, and directed Mr. McDonald to show cause within fourteen days from the date of the notice why this Court should not impose sanctions in accordance with Rule 2(b) of the Mississippi Rules of Appellate Procedure. Mr. McDonald did not file a response.
>
> After due consideration, we find that the said Mr. McDonald shall appear before this panel on November 9, 2015, at 1:30 p.m., then and there to show cause, if any he can, why he should not be sanctioned for his failure timely to

3

file . . . Appellee' s brief in this case.

¶7.     On November 9, 2015, a panel of the supreme court held a hearing consistent with this order. At the hearing, the justices inquired as to the reason(s) for the failure to file a timely brief. Counsel for the City gave several reasons, none of which were reasonable grounds to justify the City's failure to file a timely brief.

¶8.     On November 12, 2015, the supreme court entered the following order:

> On November 9, 2015, Boty McDonald (McDonald), prosecutor for the City of Ridgeland[,] . . . appeared before the panel of Dickinson, P.J., Pierce and King, JJ., for a show-cause hearing that was ordered by the panel of Randolph, P.J., Pierce and King, JJ.[,] on October 1, 2015.
>
> The panel ordered McDonald to appear and show cause, if any, why he should not be sanctioned for failing to timely file his Appellee's brief. The panel also ordered the Attorney General's Office to appear and to discuss that Office's role and responsibility in this matter under Article 6, Section 169, of the Mississippi Constitution and section 21-13-19 of the Mississippi Code Annotated. The panel further invited Norman's counsel to appear and offer proof of prejudice, if any, Norman may have suffered as a result of . . . Appellee's failure to file a brief. During the show-cause hearing, McDonald confessed prejudicial error in the trial court as to Norman's conviction, and further stated that the judgment of conviction should be reversed.
>
> After due consideration, the panel finds that McDonald should file a brief with this Court, stating the City of Ridgeland's position. We further find that our decision on possible sanctions should be held in abeyance until the brief has been filed, and that the Office of the Attorney General has no further mandatory responsibilities in this matter.

¶9.     On November 22, 2015, McDonald filed a document entitled "Appellee's Confession of Appellant's Brief" on behalf of the City of Ridgeland.

¶10.    By order dated January 20, 2016, the Mississippi Supreme Court entered an order that held the "judgment of the Circuit Court of Madison County is reversed, the judgment of the

4

County Court of Madison County is reversed, and the judgment of the Ridgeland Municipal Court is reversed and rendered." The court assessed all costs to the City.

¶11. Based on the supreme court's procedure in handling the City's failure to file a brief in *Norman*, on February 4, 2016, this Court entered the following sua sponte order in this case:

> The parties are directed to file a brief within twenty days of the entry of this order addressing the following issue:
>
>> Whether McDonald's admission during the show-cause hearing in *Norman* that he is responsible for filing a responsive brief on behalf of the City of Ridgeland, and the Mississippi Supreme Court's express instruction to file a brief in that case[,] retroactively impacts the standard of review in this appeal.
>
> Therefore, on the Court's own motion, the parties shall file supplemental briefs as directed in this order. The briefs are to be simultaneously filed within twenty (20) days of the entry of this order.

Contrary to the specific direction of this Order, the City of Ridgeland did not file a supplemental brief or any response.

¶12. Nevertheless, we recognize that we must review this case based on the following principle: "An appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed." *Clack*, 139 So. 3d at 781 (¶17).

¶13. However, in light of the consistent failure of the City of Ridgeland to participate in the proper judicial process, we have determined that the City of Ridgeland or its legal counsel has determined that it has no responsibility to prosecute cases before the appellate courts of Mississippi. We recognize the principle this Court may not automatically reverse

5

the judgment simply based on the City's neglectful and disrespectful failure to file a brief. However, as the Supreme Court considered this circumstance in *Norman* and this Court provided the City of Ridgeland and its counsel with similar notice in the February 4, 2016 order, we have determined that the City of Ridgeland's failure to file a brief on appeal is an intentional and meaningful act that is indeed tantamount to confession of the errors alleged by the appellant. We therefore reverse and render the judgment entered against Webber.

¶14. We agree with much of the analysis by the dissent. Indeed, except for the fact of the City of Ridgeland's recent history in its apparently intentional refusal to participate in the appellate process, we would agree with the dissent's argument to affirm Webber's conviction. However, we also examine this case in light of *Norman* and, more importantly, the City of Ridgeland's failure to respond to this Court's order dated February 4, 2016, where we asked the City to advise us as to:

> Whether McDonald's admission during the show-cause hearing in *Norman* that he is responsible for filing a responsive brief on behalf of the City of Ridgeland, and the Mississippi Supreme Court's express instruction to file a brief in that case[,] retroactively impacts the standard of review in this appeal.

Without the input requested by the City of Ridgeland, we find that the Mississippi Supreme Court's express instruction to file a brief in *Norman* retroactively impacts the standard of review in this appeal and requires that we reverse and render the judgment against Webber.

¶15. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE CITY OF RIDGELAND.**

**LEE, C.J., ISHEE, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., BARNES AND CARLTON, JJ.; FAIR, J., JOINS IN PART.**

**WILSON, J., DISSENTING:**

¶16. When, as in this case, the appellee fails to file a brief,

> this Court has two options. First, we may take the appellee's failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. However, if the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we may disregard the appellee's error and affirm.[1]

In this case, "the record can be conveniently examined," as it consists primarily of about forty pages of testimony, a video of Webber's arrest, and a few pictures. The record also "reveals a sound and unmistakable basis" for affirming, namely, that there is sufficient evidence to support the conviction. Therefore, I would affirm.

¶17. Webber testified that he woke up "right around 5 a.m." and decided to drive to the store for cigarettes. While driving through his neighborhood, only a block-and-a-half from his house, Webber drove well off the street into a neighbor's front yard, where his SUV collided with a sizable Bradford pear tree with enough force to knock down the tree and do significant damage to the front of the SUV. Webber testified that his SUV "apparently" then "bounced back" approximately seventy feet before coming to rest atop the mailbox of the

---

[1] *Archie v. City of Canton*, 92 So. 3d 1279, 1282 (¶10) (Miss. Ct. App. 2012) (quoting *Thornton v. Holloway*, 49 So. 3d 125, 128-29 (¶10) (Miss. Ct. App. 2010)) (alteration omitted); *see Chatman v. State*, 761 So. 2d 851, 854 (¶9) (Miss. 2000) (holding that the State's failure to file a brief does not require "automatic reversal . . . if this Court can say with confidence that the [conviction] should be affirmed"); *McCollum v. State*, 186 So. 3d 948, 953 (¶19) (Miss. Ct. App. 2016) (holding that even if the State confesses error, "we have an obligation to examine the record to determine whether the conviction should stand or be reversed").

house next door. According to Webber, he crashed as he was trying to put a Stevie Ray Vaughan CD into his CD player.

¶18. Webber's neighbor, Chris Berryman, came upon the scene on his way home from work and gave Webber a ride back to his house. At first, Berryman thought that Webber was intoxicated, but later he decided that Webber was only "disoriented" from the crash.[2] Webber testified that he "was pretty shaken up," so after he returned to his house, he "poured [him]self a glass of wine . . . with ice in it," called a tow truck, and "then gave [him]self about ten minutes or so before walking [back] up the street." Webber stated that he had only "a few sips" of his wine as he walked up the street, and Officer Webb was already on the scene of the crash when he returned. Webber claimed that he did not drink any alcohol prior to the crash.

¶19. Officer Webb arrived on the scene at 6:02 a.m. Officer Webb testified that soon after he arrived, he noticed Webber walking away from him about fifty to one hundred feet down the street. Webber appeared intoxicated—he was unsteady on his feet, his speech was slurred, and he smelled strongly of alcohol. Webber told Officer Webb that he had "f—ed up." Officer Webb arrested Webber for driving under the influence and transported him to the police station. Officer Webb testified that field sobriety tests were not necessary given Webber's impaired condition, and "it wouldn't have been safe for [Webber] to do any walk-and-turn or one-leg stand the way he was walking out there."

---

[2] Berryman testified that he found Webber on his way home from work around 4 a.m., but that was contradicted by Webber's own testimony that he did not leave his house until around 5 a.m. It was also contradicted by Officer Webb's testimony that the crash had not occurred when he drove by the same location between 4:40 and 5 a.m.

¶20. Video of Webber en route to the station was admitted into evidence. In the video, Webber makes a number of comments such as that he had "screwed up" and was a "bad-ass criminal." At no point did Webber attempt to tell Officer Webb that he began drinking only after the crash. The trial judge found that the video was "very compelling as to [Webber's] impairment." The judge found that Webber was "very impaired" and that "what is seen in the video is not consistent" with Webber's testimony that he consumed only a small amount of wine after the crash. At 7 a.m., Webber submitted to an intoxilyzer test, which showed a blood-alcohol concentration of .24%, i.e., three times the legal limit.

¶21. On appeal, Webber argues that the evidence was insufficient to sustain his conviction because, in his view, "it was uncontroverted that [he] did not consume any alcohol prior to operating his vehicle and was not intoxicated." While that is Webber's story, it is not consistent with other evidence presented. The trial judge found that the small amount of wine that Webber claimed that he consumed in the few minutes prior to his encounter with Officer Webb did not explain Webber's obviously impaired state in the video of his arrest or the results of his intoxilyzer test, which showed a blood-alcohol concentration three times the legal limit at 7 a.m. At best, Webber's and Berryman's testimony created an issue of fact for the trial judge to decide. But "viewing the evidence in the light most favorable to the prosecution," a "rational trier of fact" certainly could have found Webber guilty "beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). Webber's evidence was hardly of such "force that reasonable men could not have found beyond a reasonable doubt that [Webber] was guilty."

*Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). Accordingly, his conviction should be affirmed. *Id.*

¶22. Webber primarily contends that *Hedrick v. State*, 637 So. 2d 834 (Miss. 1994), requires reversal, but the facts of *Hedrick* are readily distinguishable. Hedrick was arrested two and a half hours after his car struck and killed a pedestrian. He testified that although he did not drink any alcohol prior to the fatal accident, he downed a half pint of gin between the accident and his arrest. The statements of another witness also tended to corroborate that Hedrick drank the gin after the accident. After Hedrick was arrested, his intoxilyzer test showed a blood-alcohol concentration of .13%. *See id.* at 835-36. The State presented no evidence at trial that Hedrick consumed alcohol prior to or was intoxicated at the time of the fatal accident. *See id.* at 838. The Supreme Court concluded that

> [t]he lack of testimony or other evidence contradicting [Hedrick's] assertion that he was not intoxicated at the time of the accident, as well as the statements made by [another witness] which tended to corroborate [Hedrick's] testimony, lead to the conclusion that insufficient evidence was presented at trial upon which the jury could have found the existence of the threshold element of intoxication at the time of the accident.

*Id.* at 839.

¶23. Thus, the evidence was insufficient to convict Hedrick because his post-accident consumption of half a pint of gin fully explained his .13% blood-alcohol concentration, *and there was no other evidence to contradict his version of events or to show that he was intoxicated at the time of the accident*. The same cannot be said in this case. Webber's testimony that he consumed a small amount of wine in the few minutes before his encounter with Officer Webb did not explain his evident impairment in his arrest video or his .24%

10

blood-alcohol concentration at 7 a.m. At the very least, the video and test results permit an inference that Webber was drinking before the crash, was intoxicated at the time of the accident, and had a blood-alcohol concentration in excess of the legal limit. A "rational trier of fact" certainly could have found, as the trial judge did, that Webber must have been intoxicated and over the legal limit before he consumed a small amount of wine post-crash. *Bush*, 896 So. 2d at 843 (¶16).[3] Stated differently, the trial judge was not compelled, as a matter of law, to acquit Webber simply because Webber sipped some wine after the fact.

¶24. For essentially the same reasons, Webber's claim that his intoxilyzer test results were inadmissible is without merit. The intoxilyzer test in *Hedrick* had limited probative value, if any, because the defendant consumed a half pint of gin in the three hours between the accident and the test. Here, in contrast, Webber himself testified that he drank only a small amount of wine after the crash, which did not explain his blood-alcohol concentration of three times the legal limit. Evidence of post-accident alcohol consumption may be admissible, *see, e.g.*, *State v. Bashaw*, 531 N.W.2d 203, 207 (Minn. Ct. App. 1995), as it was in this case, but Webber cites no authority suggesting that *any* post-accident alcohol consumption automatically requires exclusion of the results of an intoxilyzer test. Indeed, such a rule would encourage post-accident consumption as a way to thwart prosecution. In this case, Webber's test results were properly admitted.

_____

[3] Webber was convicted under both subsection (a) (or "common law DUI") and subsection (c) (or "per se DUI") of Mississippi Code Annotated section 63-11-30(1) (Rev. 2013). The trial judge specifically found that "even if [he] were to reject all evidence regarding the charge of [a] subsection C violation, . . . the State ha[d] more than proven its case beyond a reasonable doubt under subsection A." The circuit court also affirmed the conviction under both subsections.

¶25. As the majority discusses, the City of Ridgeland repeatedly has failed to file briefs in DUI cases in this Court and the Supreme Court, including in response to a specific order in this case. Yet, in almost all prior cases, we have still affirmed the conviction because it could be affirmed with confidence despite the City's failure. *See, e.g.*, *Nolan v. State*, 182 So. 3d 484, 488 (¶6) & n.1 (Miss. Ct. App. 2016); *Woods v. State*, 175 So. 3d 579, 580-81 (¶9) & n.2 (Miss. Ct. App. 2015); *Drabicki v. City of Ridgeland*, 130 So. 3d 113, 118 (¶19) (Miss. Ct. App. 2013). When we have reversed, we did so because we could not "confidently affirm the defendant's conviction" on the merits. *Clack v. City of Ridgeland*, 139 So. 3d 778, 782 (¶22) (Miss. Ct. App. 2014). I am not aware of a prior such case in which we have reversed the conviction without regard to the merits, as the majority does now. Instead, we have reasoned that the public interest in "[e]nsuring that motorists . . . refrain from operating motor vehicles while under the influence of alcohol . . . warrant[s] our review, even in the absence of the [City's] brief." *Lobo v. City of Ridgeland*, 135 So. 3d 148, 152 (¶12) (Miss. Ct. App. 2013); *cf. Young v. United States*, 315 U.S. 257, 258-59 (1942) ("[O]ur judicial obligations compel us to examine independently the errors confessed" because "[t]he public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding.").

¶26. I do not believe that the Supreme Court's recent order in *Norman v. State*, No. 2014-KM-01789-SCT, gives any indication that we should change our approach to the merits of such cases. In *Norman*, Boty McDonald finally appeared on behalf of the City (by order of the Supreme Court and on threat of sanctions), he confessed prejudicial error in the trial

court, and the City specifically requested that the defendant's conviction be reversed. Here, in contrast, McDonald ignored this Court's order, and the City has again failed to file any brief. That likely justifies sanctions against the City and/or McDonald, but I do not believe that it is a basis for setting aside a valid DUI conviction that is supported by sufficient evidence. It is also arbitrary for Webber to receive a windfall—where a series of similarly situated defendants/appellants have not—simply because his appeal happens to be the one in which the Court has finally had enough of the City's neglect of its obligations and disrespect for this Court. I would affirm Webber's convictions and address the issue of possible sanctions separately. Accordingly, I respectfully dissent.

**IRVING, P.J., BARNES AND CARLTON, JJ., JOIN THIS OPINION; FAIR, J., JOINS THIS OPINION IN PART.**